## James v. Golden.

### (Decided November 29, 1916.)

### Appeal from Knox Circuit Court.

1. **Appeal and Error—Review—Findings of Court—Effect in Equitable Action.**—In an action in equity the chancellor's judgment is entitled to some weight, but the Court of Appeals will weigh and judge of the sufficiency of the evidence for itself, and where it is found to preponderate for one side or the other in such a way as to convince it that the chancellor erred, his judgment will be reversed.

2. **Mines and Minerals—Conveyances—Options—Evidence.**—In an action in equity, on a cross-petition alleging the sale of options on certain coal lands by G to C and J as individuals and the receipt by him of their joint note for $10,000.00 for same; held, that evidence is insufficient to establish such sale or the existence of such a note but that it shows the sale of the lands by G to a corporation in which the three were stockholders.

C. E. RANKIN for appellant.

J. D. TUGGLE, BROWN & NUCKOLS, J. M. ROBSION, W. R. LAY and HIRAM H. OWENS for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This appeal brings to us for review a judgment of $9,518.00, with interest from the date of its entry, and costs, recovered of the appellant, Frank P. James, by the appellee, John E. Golden, on cross-petition, in the Knox circuit court.

The action in which the cross-petition was filed was brought by the National Bank of John A. Black, of Barbourville, on a $2,800.00 past due note upon which the appellee was principal debtor and Howard and J. R. Curry sureties. Appellee was served with summons but the sureties, being non-residents, were proceeded against by warning order. An order of attachment was issued against the property of the defendants. Appellee filed to the petition an answer, which was made a counterclaim against the bank and a cross-petition against the appellant, Frank P. James, and J. R. Curry, in which, after denying any indebtedness upon the note of $2,800.00 sued for, he in substance alleged that it was paid by him in the following manner: That in the month of April, 1912, in consideration of the sum of $10,000.00, he sold and by deed conveyed his interest in certain Knox county lands upon which he held options of purchase, to J. R. Curry and the appellant, Frank P. James, as individuals, and that the former, for himself and James, executed and delivered to him his note for that amount; that they accepted but never put to record the deed he made them; that at the time of the execution by him of the $2,800.00 note to the National Bank of John A. Black, John A. Black, the president thereof, had a judgment against him for $3,200.00 for which he had caused certain real estate belonging to appellee in the city of Barbourville to be sold and purchased for himself (Black) by Hiram H. Owens; that the indebtedness of $3,200.00 on Black's judgment, for which appellee's property was sold and purchased by Owens for Black, together with the $2,800.00 note upon which Howard and J. R. Curry were his sureties, made his total indebtedness to Black and the bank $6,000.00, to satisfy which Black fraudulently induced him to deliver to J. R. Curry the note of $10,000.00 which the latter had for himself and appellant executed to appellee for his interest in the Knox county lands, by agreeing to accept an order from appellee upon J. R. Curry for the sum of $6,000.00, which order appellee did in writing draw upon J. R. Curry and deliver to Black in his own right and as president of the bank; that Curry wrote his acceptance upon the order and the same was accepted by Black in full satisfaction of the $2,800.00 note sued on and the $3,-200.00 for which he had caused appellee's property in Barbourville to be sold; that his surrender of the

$10,000.00 note to J. R. Curry thus procured by the fraudulent act of John A. Black was without a consideration except to the amount of the order for $6,000.00 which he gave Black upon Curry and which the latter accepted in writing and agreed to pay Black, and $482.00 which Curry and appellant had previously paid on the $10,000.00 note, and for the difference between the $6,000.00, $482.00 and $10,000.00, judgment was asked against J. R. Curry and the appellant James.

By an amended answer, counter-claim and cross-petition it was alleged by appellee that since the filing of his original answer, counter-claim and cross-petition, a settlement was made between him and John A. Black, the latter acting for himself and for the National Bank of John A. Black, whereby it was agreed that the order for $6,000.00, drawn by appellee on J. R. Curry in favor of John A. Black should be and was surrendered and returned to appellee by John A. Black, and judgment was entered in pursuance of such agreement in the action brought by Black against him. The amended answer, counter-claim and cross-petition further alleged that no part of the $6,000.00 order was ever paid by appellant or J. R. Curry and its surrender to appellee entitled him to recover of them the amount of the $10,000.00 note, less the credit of $482.00 to which they are entitled thereon, and for this he asked judgment and asserted a lien upon the Knox county lands.

J. R. Curry, who was only constructively summoned as a non-resident on the cross-petition, filed no answer thereto, but the appellant, James, John A. Black and the National Bank of John A. Black, filed separate answers to the cross-petition, as amended, containing a traverse of its averments. The answer of the appellant, James, in addition alleged that appellee never held his or Curry's note for $10,000.00 or any amount; that there was never a sale of the Knox county lands or appellee's equity therein to appellant and Curry or either of them; that the only sale made thereof by appellee was to the Knox County Coal Company, in which he and Curry were stockholders to the amount of five shares of $100.00 each and the appellee a stockholder to the amount of 1,240 shares of $100.00 each. The judgment of the court granted appellee all the relief prayed by him, and it now becomes necessary for us to determine whether the judgment was authorized by the evidence.

Appellant's and J. R. Curry's connection with appellee and the Knox county lands arose, as it appears from the record, out of the following transactions: The appellee, John E. Golden, then and now a resident of Knox county, this state, having prior to April, 1912, secured options at $20.00 per acre on about 5,000 acres of land supposed to contain coal, lying in that county, upon which he seems to have paid nothing, went to the city of Lexington about the first of April, 1912, had an interview with the Rev. J. W. Porter of that city and requested him to endorse a note of $10,000.00 upon which he (appellee) desired to raise money to meet some pressing demands for which he was liable, representing that he wished to organize a corporation to exploit the Knox county lands upon which he held the options. The Rev. Mr. Porter declined to sign the note, but telephoned J. R. Curry, then a resident of Lexington, suggesting to the latter that he might be able to aid appellee in organizing the corporation. Thereupon appellee went to see Curry, discussed the matter with him and obtained Curry's consent to go to Knox county and look at the lands, which he did within a day or two thereafter. Appellee went again to Lexington April 16th to see Curry and they agreed to organize a corporation, to be known as the Knox County Coal Company, to take over the Knox county lands, and sell enough stock of the corporation to pay for it. It was then further agreed between appellee and Curry that Curry and one other person, to be secured, should become sureties or accommodation endorsers on appellee's note for $10,000.00, to tide him over his financial troubles, the payment of the note to be also provided for out of the proceeds of the stock of the corporation sold. It was contemplated by appellee and Curry that the Rev. J. W. Porter would become the other surety or endorser on the note, but he refused to do so. Thereupon Curry suggested that they see the appellant, Frank P. James, and request him to become a surety or endorser thereon with Curry for appellee, participant in organizing the corporation and a stockholder therein; but James, upon being invited to sign the note for $10,000.00, also refused to do so. He expressed his willingness, however, to take a small amount of stock in a corporation to exploit the lands if, upon seeing them, he found them to be of the quality and value represented by appellee, and he agreed to go upon and inspect the

lands. So on April 24, 1912, appellee's son, appellant and Curry looked over the lands, following which it was agreed between the appellee, Curry and appellant, that the corporation should be organized to take the lands at the price per acre stipulated in the options held thereon by appellee, the understanding between them being that the capital stock should not exceed $250,-000.00; that appellant and Curry would take five shares each, of $100.00 per share, that appellee would subscribe for 1,240 shares of $100.00 each, that appellant would allow the use of his name as president of the corporation and Curry his name as its secretary and treasurer, that the "Knox County Coal Company" should be the title of the corporation and that enough of the stock be immediately sold to pay appellee $10,000.00 for his equity in the Knox county lands and also pay for the lands. This agreement was reached April 24, 1912, and on the afternoon of the same day appellant left Barbourville and returned to Lexington. Curry left Barbourville on a night train and got to Lexington the next morning. It was the understanding between them and appellee that his brother should prepare the articles incorporating the Knox County Coal Company and also the deed conveying appellee's equity in the lands to the corporation and send both the articles of incorporation and deed to Curry and appellant at Lexington. The deed from appellee to the corporation, conveying his equity in the lands, evidenced by title bonds, was signed and acknowledged by himself and wife April 26, 1912, and was received by appellant and Curry on the 27th. He was at once informed by them, however, that they had been advised by their attorney, Mr. Botts, of Lexington, that the deed could not be accepted until the instrument incorporating the Knox County Coal Company was executed and recorded and the organization of the company effected thereunder.

In a few days appellant and Curry received from appellee the articles of incorporation which had been prepared by his brother, but Curry, acting upon the advice of the attorney, Botts, immediately wrote appellee calling his attention to certain defects in the articles as prepared, in reply to which appellee wrote Curry to have the articles of incorporation prepared in such form as would obviate the defects pointed out in the instrument. Thereupon new articles of incorporation were prepared

by Botts, which were later acknowledged by appellee, appellant and Curry, and the organization of the corporation duly effected, each of the three subscribing the shares of stock they had agreed to take in the corporation. By a further agreement between the parties the deed made by appellee and wife conveying his equity in the Knox county lands was not to be accepted or the money paid for the lands by the corporation until the titles to the various tracts of land were examined and found to be good, abstracts made thereof, and also deeds made by the numerous owners of the lands to the corporation, in pursuance of the options or title bonds which had been obtained by appellee thereon. In June or July, 1912, down to which time W. R. Lay, an attorney, of Barbourville, was engaged in the work of examining the titles to the lands, preparing the abstracts, deeds, etc., there was a meeting of the board of directors of the corporation in Lexington, appellee being present. The deed of April 26, 1912, from appellee to the Knox County Coal Company was then discussed, considered and declared by attorney Botts to be too defective for the corporation's acceptance. In order to make the right of the corporation to a conveyance of appellee's interest in the Knox county lands a matter of record pending the execution of a proper deed, appellee then proposed to submit in writing for its formal acceptance of record his previous undertaking to convey the lands to it, all of which is shown by the minutes of the meeting. Mr. Botts was directed to reduce this proposition to writing, to be signed by appellee. Following this meeting Curry industriously attempted to find a market for the stock issued by the Knox County Coal Company, but was unable to do so. Consequently appellee received nothing for his equity in the lands, the lands were never paid for, appellee paid nothing for the stock received by him, and appellant and Curry each lost substantially an amount equal to what was to have been paid by them respectively, for their stock, made up of the aggregate of various sums advanced by them at the request of appellee for surveying and platting the lands, cost of effecting the organization of the corporation and cost of advertising and attempting to sell the stock.

Appellee's financial embarrassment reached such a crisis by September 3, 1912, that he and his wife executed

to J. R. and Howard Curry a mortgage upon their home in Barbourville and the former's interest in the Knox County Coal Company, to secure a loan of $415.00 made him by Howard Curry and a loan of $735.00 by J. R. Curry. On September 11, 1912, at appellee's earnest insistence, J. R. and Howard Curry became his sureties on the note of $2,800.00 to the National Bank of John A. Black, of Barbourville, and to indemnify them against loss as such sureties he executed to them a mortgage on his home, interest in the Knox County Coal Company, certain other real estate, and assigned them a policy of insurance on his life. This is the note upon which the bank sued, as previously stated in the opinion.

This action was brought in equity. The issue made by the appellee's cross-petition and the answers thereto are, in the main, of equitable cognizance, and the evidence upon which the judgment of the circuit court was based is all found in the record in the form of depositions. While it is the rule in this jurisdiction that we will not reverse the judgment of the chancellor on a mere matter of the credibility of the witnesses, or where, under the evidence as a whole, the truth of the matter involved is doubtful, we have, however, often held that though the chancellor's judgment is entitled to some weight, we will weigh and judge of the sufficiency of the evidence for ourselves, and where it is found to preponderate for one side or the other in such a way as to convince us that the chancellor erred, his judgment will be reversed. Farmer v. Hampton, 154 Ky. 83; Coomes Bros. v. Grigsby & Co., et al., 151 Ky. 394; Bullock v. Harrison, 145 Ky. 358; Northrup's Trustees v. Summer's Trustees, 132 Ky. 156; Powell, et al. v. Union Grocery Co., 113 S. W. 912. Our examination of the evidence in this case leads us to the conclusion that it does not support the judgment.

We will not attempt to discuss in detail the voluminous evidence appearing in the record, but will content ourselves with the consideration of such of the salient facts and circumstances furnished by it as, in our opinion, refute the appellee's contention that the sale of his interest or equity in the Knox county lands was made to J. R. Curry and the appellant, Frank P. James, as individuals. It is proper, however, to notice first the evidence upon which he relies. This consists of his own testimony, that of W. M. Parker, J. F. Stanfill, R. W.

Cole and ,W. H. Davis. Appellee alone testifies that there was a contract between himself, J. R. Curry and appellant whereby Curry and appellant became the purchasers, individually, of the Knox county lands. He also testified that this contract was made when they were at Barbourville, following their inspection of the lands and before appellant left Barbourville on his return to Lexington. It is admitted by appellee that April 24, 1912, was the day upon which Curry and appellant inspected the lands. He also claims that on the following day or the second day thereafter, he and his wife signed and acknowledged before W. M. Parker a deed, conveying his equity in the Knox county lands to Curry and appellant jointly, as individuals, and that this deed was by him enclosed in an envelope, addressed to Curry and appellant at Lexington, and after being stamped was deposited by him in the postoffice for transmission by mail. Appellant and Curry both testified that no such deed reached them or was expected by them; that they never contemplated the purchase of appellee's interest in the lands as individuals and were never asked by appellee to so purchase them. Appellee proves by no witness other than himself that J. R. Curry executed to him in his own behalf and for the appellant, James, a note of $10,000.00 as evidencing the consideration to be paid by them for his interest in the lands. There is no evidence in the record conducing to prove that he was ever seen by anyone in the possession of such a note, and though his answer and cross-petition contains an averment that he was induced by the fraud of John A. Black to surrender this note to J. R. Curry, he did not take Black's deposition to prove the existence of the note, and the latter's reply filed to his counter-claim and cross-petition emphatically denies that he fraudulently or otherwise procured the surrender of the note by appellee to Curry, and also, denies that there was such a note. James and Curry testified that no such note was ever executed by them, nor were they or either of them asked to do so. W. M. Parker testified that he took the acknowledgments of appellee and his wife to a deed to appellant and Curry shortly after the visit of James and Curry to Barbourville, but was indefinite in his recollection and statements as to the nature and contents of the deed. It appears, however, from the testimony of James, Curry and appellee that they owned some lands

in Letcher and Perry counties which they had purchased of appellee and to which he made them a deed or deeds, and from all the testimony bearing on that point it is more than probable that the deed which Parker claims was acknowledged before him was the deed to the Letcher and Perry county lands.

The witnesses, Stanfill, Cole and Davis, testified as to certain statements which they claim were made by J. R. Curry in the absence of appellant tending to indicate that the transaction between appellee, James and Curry with respect to the Knox county lands was an individual matter. But according to their testimony, substantially all that Curry said to them with reference to the Knox county.lands was that "we" bought them or "our" lands or "his company," referring, as the witnesses inferred, to himself and James as the owners. These conversations were all denied by Curry. Besides, it is a matter of every-day occurrence that persons connected with a corporation or in control of its property, in speaking of either commonly refer to the corporation, its property or business as our property, our company and the like. Officers or stockholders of a corporation cannot be subjected to personal liability for its obligations merely because of referring to it as the witnesses mentioned say was done by Curry. Manifestly such evidence as was thus furnished by appellee and his witnesses is trivial and clearly insufficient to establish his contention of a sale of the lands to James and Curry as individuals.

Upon the other hand, the contention of appellant that the sale made by appellee of his equity or interest in the Knox county lands was made to the Knox County Coal Company, must be accepted for the following reasons: The deed appellee executed and sent to J. R. Curry at Lexington was made to the Knox County Coal Company. He caused the writing creating the Knox County Coal Company as a corporation to be written and he, together with James and Curry, signed and acknowledged it as incorporators before it was put to record. He and they, acting in concert, effected the organization of the corporation. He and they were the only subscribers to the stock, and the numerous letters found with the depositions of James and Curry show his continuing and consistent recognition of the corporation as the owner of the Knox county lands, and also show his per-

sistent urging of Curry to make sales of the stock, in order that he might be relieved, with what would come to him out of such sales, of the financial troubles under which he was laboring. These letters also show the terms of the contract under which the lands were taken over by the Knox County Coal Company as a corporation; and although it is shown by the testimony of both James and Curry that they repeatedly wrote appellee with reference to the corporation, its business and needs, it is a significant fact that not one of these letters written to and received by appellee were made a part of his deposition or otherwise introduced in evidence. Moreover, although the depositions of James and Curry were given after the deposition of appellee was taken, he did not permit his deposition to be retaken in rebuttal that he might contradict any statement of fact made in theirs. Another circumstance strongly conducing to disprove appellee's contention of a sale to appellant and Curry is the fact that on December 21, 1912, six or eight months after the Knox County Coal Company was incorporated, he gave to W. T. Turner an order on the corporation for a certain sum of money and told him at the time that he had sold the Knox County Coal Company lands for which it had not paid him. On January 18, 1913, he gave a similar order on the Knox County Coal Company to W. H. Cleaton and about the same time yet another to W. H. Davis. Why should he be giving such orders unless there had been a sale and conveyance of the lands to the Knox County Coal Company and that company was owing him the money for which he later sought to make appellant and Curry liable? It also appears from the evidence that appellee, notwithstanding his claim of a sale of the Knox county lands to appellant and Curry individually, April 24, 1912, endeavored to make a sale of them to Williams & Young on April 25, 1912. Again, if there was an indebtedness of $10,000.00 from appellant and Curry to him growing out of a sale to them as individuals of the lands, why should he, as the evidence shows was done, on May 8, 1912, borrow of Curry money, secured by a mortgage upon his property, instead of obtaining from him that sum as a payment on Curry's and appellant's indebtedness to him and crediting it on the $10,000.00 notes of theirs which he claimed to hold? In this connection the further inquiry suggests itself, if, as claimed by appellee, he was then holding the note of

appellant and Curry for $10,000.00 as evidencing the consideration they were to pay him for the Knox county lands, why on September 11, 1912, did he induce J. R. Curry and his brother, Howard Curry, to become his sureties on the note of $2,800.00 to the National Bank of John A. Black, give them a mortgage on his home, his interest in the Knox County Coal Company and assign them a policy of insurance on his life, all for the purpose of indemnifying them against loss by reason of their suretyship, instead of demanding of J. R. Curry a payment of that amount on the note of $10,000.00, and giving credit thereon for same? Why, it may further be asked, if the appellant, James, was, as claimed by appellee, jointly liable with J. R. Curry to him on the $10,000.00 note referred to, did appellee, August 9, 1913, propose to buy from James his Letcher and Perry county lands at the price of $2,500.00, execute to him a note therefor due one year after date, its payment to be secured by a lien retained in the deed to be made him by James, conveying the lands, instead of offering to purchase the lands at $2,500.00 and give him credit for that sum on the $10,000.00 note?

It is not to be overlooked that no claim was ever made by appellee that there had been a sale or conveyance of the Knox county lands to James and Curry, instead of to the Knox County Coal Company, until after he was sued by the National Bank of John A. Black upon the $2,800.00 note. The most plausible reason appearing from the record for this remarkable change of front on the part of appellee is furnished by the insolvency of the Knox County Coal Company, resulting from the inability of its officers to sell its capital stock, from the proceeds of which it had been understood by all the parties concerned appellee was to be paid the $10,000.00 he was to receive from the corporation for his options on the Knox county lands, and the owners of the lands were to be paid their value. The fact that appellant, after the execution of the $2,800.00 note to the National Bank of John A. Black, gave Black as president of the bank an order on J. R. Curry for $6,000.00, or that the order was accepted by Curry, does not conduce to prove a sale of the Knox county lands to Curry and appellant. The reply filed by the bank, and Black as its president, to the answer and cross-petition of appellee, alleges that the order was given by appellee and accepted by Curry,

as shown by his acceptance endorsed thereon, with the distinct understanding between all the parties, that it was to be paid out of moneys realized from the sale of the stock of the Knox County Coal Company when made by Curry. This fact is also established by the depositions of Curry and appellant and is not contradicted by appellee or any witness introduced in his behalf. The order was not paid because Curry was unable to sell the stock of the corporation. Neither he nor appellant was individually liable for any part of the order, and the fact that nothing was paid on it imposed upon neither of them any liability, consequently appellee was not entitled to a judgment against appellant or Curry by reason of the giving of the order; nor did the failure to pay any part of it have the effect to revive any liability upon their part to appellee upon a note for $10,000.00, as according to the evidence no such note was ever executed by them or either of them. The giving of the order by Curry was purely a matter of accommodation to appellee and was wholly without consideration as far as Curry and appellant were individually concerned.

Appellee's contention that there was a sale made of his interest or equity in the Knox county lands to appellant and Curry is not only overthrown by the testimony of the latter and the numerous facts and circumstances we have already commented on in the opinion, but by his own evidence as well. This shows that though, according to his claim, the deed to them as individuals was written and mailed them on April 25, 1912, his admission that they, on the 26th, telephoned him to hasten the execution of the deed to the corporation, together with the failure of proof to show that they ever received the deed to them as individuals, must be held to manifest a failure by them to accept the latter deed; and the further fact that appellee did, as requested by their telephone message, at once execute and send to them the deed to the Knox County Coal Company, demonstrates that the sale of the lands was made to that company.

In our opinion the evidence found in the record furnishes no sufficient basis for the judgment rendered by the circuit court; hence that judgment is reversed and cause remanded, with directions to the circuit court to set it aside and dismiss the appellee's cross-petition.