## Faulkner v. Headrick's Administrator.

(Decided March 23, 1926.)

### Appeal from Pulaski Circuit Court.

1. Appeal and Error.—Judgment of chancellor will not be reversed on mere matter of credibility of witnesses, or where, under evidence as whole, truth is doubtful.

2. Appeal and Error.—Appellate court will weigh sufficiency of evidence, and, where it preponderates so as to convince court that chancellor erred, judgment will be reversed.

3. Executors and Administrators.—In action by executor on notes of deceased, preponderance of evidence held to show genuineness of receipt and fact of payment and not to show that receipt was forged.

BEN V. SMITH & SON for appellant.

W. M. CATRON for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

J. J. Headrick's administrator brought this suit against Benjamin Faulkner to recover on four notes aggregating $450.00, and to enforce the vendor's lien by which they were secured, and also to recover on another note for $100.00. Faulkner pleaded payment and execution and delivery of the following receipt:

"This the 13th day of October, 1921, I receipt Mr. Ben Faulkner for all notes paid in full for which I hold against him.

"J. J. HEADRICK."

On final hearing the court adjudged that the unsecured note had been paid, and gave judgment in favor of plaintiff for $450.00, subject to two credits, one of

$14.00 and the other $25.00, and directed the sale of the land. Defendant appeals.

The evidence is as follows: Dr. Price deposed that J. J. Headrick died January 7, 1922. He had been bedfast since December 1, 1921. Up to within a few weeks of that time he had been able to look after his own business and his mind was all right. Shortly before his appointment as committee he took possession of Headrick's notes. The only credit on the notes was one of $14.00 of January 30, 1920. Within a month or six weeks after the death of Mr. Headrick he mailed Faulkner a notice asking him to settle the notes. Faulkner made no response, but later on he met Faulkner and Faulkner said the matter had been settled up. He had seen a number of papers and checks signed by Mr. Headrick, and, in his opinion, the signature on the receipt was not in his handwriting. He admitted that he had the Hicks and Cummins notes in his possession for about $200.00, but thought Judge Catron had one. The $75.00 note was among the papers. Edgar Murrell, an employe of the Farmers' National Bank, who had been in the banking business for about twenty years and was acquainted with Headrick's signature, gave it as his opinion that the signature on the deed and the signature on the receipt were not in the same handwriting. On cross-examination he stated that he would not swear that old man Headrick did not sign the receipt, but was just giving his opinion. He believed that if a check were presented at the bank signed like the receipt he would have paid it.

On the other hand, appellant testified that he paid Headrick $200.00 in notes on Hicks and Cummins which were secured by lien on a farm in Lincoln county. He also delivered Headrick a cane mill worth $45.00 and for the delivery of which he was to receive $5.00. He also made one payment of $30.00 and another payment of $20.00. He further claims that he made two payments of about $100.00 each, and final payment of approximately $100.00 at his home before Headrick died. The night before the balance was paid Headrick stated that he had stayed all night with Bill Todd. In September after he paid Headrick in full he urged him to come to Somerset and release the lien, but Headrick told him that he would give him a receipt. A few days later he met Headrick on his way to Somerset and Headrick delivered him the receipt. Headrick stated that he did not know where the

notes were, but thought he had given them to Dr. Price. Dr. Price lived about a half a mile away. He placed the receipt with the deed. Appellant's son, who was seventeen years of age, testified that he was present when Headrick handed his father the receipt and his father put it in his pocket-book. After Headrick died and Dr. Price undertook to collect the notes, appellant took the receipt to several of Headrick's neighbors to see if they could identify the writing. C. J. P. Carver, cashier of the Citizens' Bank of Somerset, testified that the deceased had kept an account with his bank; that the bank kept a card signed by the deceased; that he examined the signature on the receipt and card, and was of the opinion that they were written by the same person, and that the receipt was signed by the deceased. Ernest Sears, the assistant cashier of the same bank, testified that the signature on the receipt and the signature on the card were written by the same person. In his opinion it would have taken an expert to forge the signature on the receipt. Sylvester Stevens, who had known the deceased for about thirty years, and had frequently seen his signature, and had a receipt given by him in his pocket, said that he would swear that the signature on the receipt was Mr. Headrick's. Jonah Stevens and C. A. Gastineau and others who were acquainted with the signature of deceased, were of the opinion that the signature on the receipt was in his handwriting. W. E. Todd deposed that Headrick had stayed all night with him and stated that Faulkner owed him a little balance on his land and he was going to get it the next day. Sylvanus Stevens was present when Headrick and Faulkner were discussing the settlement of some land notes. Faulkner had purchased a place from Headrick and had sold his place up north of Woodstock to Cummins and Anna Hicks. He wanted to let Headrick have these notes on the place he had bought. Headrick had bought some mules from witness and owed him about $126.00. He gave him the $125.00 Cummins and Hicks note. He took it to the bank of Crab Orchard, but the bank said it could not handle it then. He afterwards sent the note back to Dr. Price, the administrator. He also said he had seen Headrick write and would swear the signature on the receipt was his.

It is true that appellant's testimony as to the amount and time of payments is somewhat indefinite. It is like-

wise true that for quite a while he carried with him a large sum of money instead of applying it immediately in discharge of the debt, and that when he made the payments he failed to take a receipt therefor, or to see that the sums were applied on the notes, or that such notes as were entirely paid were released of record. However, it frequently happens that men of little experience in business affairs are careless in attending to their business, and for this reason the omission to take steps that ought to have been taken is not always evidence that the things claimed to have been done were not actually done. In the case at bar neither appellant nor his son was impeached. According to their evidence the receipt was delivered by Mr. Headrick. Not only so, but appellant testified that the notes were fully discharged and that the last payment was made at his home by Headrick, who stated that he had spent the night before at the home of William Todd. Todd states that Headrick did spend the night with him and said that he was going over to Faulkner's to collect a small balance that Faulkner owed him. There is further evidence that the two Cummins and Hicks notes, one for $75.00 and the other for $125.00, were actually delivered to Headrick, and there is no dispute as to the sale and delivery of the cane mill. Moreover, numerous witnesses testified that the receipt relied on was signed by Headrick, and the assistant cashier of the Citizens' Bank of Somerset testified that it would have taken an expert to forge the signature. While it is the rule not to reverse the judgment of the chancellor on a mere matter of the credibility of the witnesses, or where under the evidence as a whole the truth of the matter involved is doubtful, it is also the rule that we will weigh and judge of the sufficiency of the evidence for ourselves, and, where it is found to preponderate for one side or the other in such a way as to convince us that the chancellor erred, his judgment will be reversed. James v. Golden, 172 Ky. 499, 189 S. W. 446. In our opinion, the evidence not only falls short of showing that appellant forged the receipt in question, but the genuineness of the receipt and the fact of payment are both supported by the preponderance of the evidence.

Judgment reversed and cause remanded with directions to enter judgment in favor of appellant.