Baz JOBE and his wife, Flossie Jobe,
et al., Appellants,

v.

Richard HAMMER, Sr. and his wife,
Vivian Hammer, et al., Appellees.

Court of Appeals of Kentucky.

March 3, 1978.

Shelly T. Riherd, Phillip R. Patton, Riherd, Richardson & Patton, Glasgow, for appellants.

Clay Hundley, Jr., Tompkinsville, for appellees.

Before HOWERTON, LESTER and REYNOLDS, JJ.

LESTER, Judge.

This appeal is before us upon a record consisting of the pleadings, a summary judgment, and a four page deposition. Since no proof was adduced before the trial court, we must glean the facts from the briefs of counsel but absent supportive evidence, we do not vouch for the authenticity of the narrative.

Peter Hammer died in 1839 seized of 150 acres of land in Monroe County. He was survived by two sons, Martin K. Hammer and Richard Hammer, who, each, inherited a one-half undivided interest in their father's property. It is asserted by way of brief that Peter died survived by eight to ten children. It is also claimed that between 1839 and 1907 Martin supposedly acquired the individual interests of his brother, Richard, and a sister (unnamed) by deeds, but the trial court was not furnished

copies. Martin's heirs are said to have made conveyances of their respective interests in the entire tract among themselves. Reference to one such deed purports to set up adverse possession in one or more of Martin's heirs but we are not favored with a copy of that document.

In 1946, the heirs of Martin Hammer brought a suit in the Monroe Circuit Court for the sale of their undivided interests in the property but the heirs of Richard Hammer were not made parties thereto. Since neither party sought to include the 1946 record in this appeal, we are unsure just what the allegations therein may have been but appellees do relate that there was no determination as to just how Martin Hammer may have gained title to the entire tract. The Commissioner's deed purports to convey the 150 acres to yet other Hammer heirs, namely, Pete, Jim and W.D.

In 1976, the three last mentioned Hammers brought the present action to sell the tract of land for the reason that it was physically incapable of being divided, claiming ownership thereof by virtue of the master commissioner's deed stemming from the 1946 legal action. Before a sale was ordered, appellants, the heirs of Richard Hammer, asked leave to file their intervening complaint, wherein they, as a class representing themselves and all other heirs, both known and unknown, of Richard, would set forth their interests in the subject real estate. Appellees filed a motion to dismiss the third party complaint or in the alternative, to grant summary judgment.

Without ruling upon appellants' motion to file the third party complaint, the court entered a "Finding Of Fact" and a "Judgment" dismissing with prejudice appellants' "claim", assigning as reason therefore that the Richard Hammer heirs were barred by "laches" and "the tolling of the Statute of Limitations."

The only evidence in this nebulous record is that of a real estate broker who related that he was familiar with the land, having been on it and having studied aerial photographs. From his deposition, we learned that there were no structures, crops or development on the land, but there was a road through the tract with the balance of it being described as "all woodland." The broker's testimony would *indicate* that not one of the parties is in open or notorious possession of the land.

■ Appellees rely upon *Wilcox v. Sams,* 213 Ky. 692, 281 S.W. 832 (1926) for the argument that the 1946 litigation followed by the judicial sale constitutes an ouster of the co-tenant appellants when the appellees entered and took possession of the land. Admittedly, this is the rule of *Wilcox, supra,* but in the case at bar, there is not one scintilla of *evidence* that anyone took possession. Moreover, the only evidence in the record would seem to be that no one is on the land or has been in recent years. Therefore, since there is no proof of possession of such an "adverse character required by law as against strangers" sufficient to bring home to appellants—co-tenants notice that appellees are holding adversely to them, then *Wilcox, supra,* does not apply and we are required to hold that the statute of limitations does not govern in this cause.

■ Since appellees concede and appellants assert that a judicial sale will not affect the title of owners of real property not parties to the action, we will not belabor that point except to hold that the heirs of Richard Hammer, upon the record as so constituted, are co-tenants with appellees. *Borderland Coal Sales Company v. Walker,* 208 Ky. 146, 270 S.W. 717 (1925), III *American Law Of Property* § 13, 13 at 524.

We now turn our attention to the question of laches. Plaintiffs below raised the plea in their answer to the third party plaintiffs' motion for leave to intervene, in spite of the fact that the circuit court never ruled upon the motion. For that matter, there are two such motions, one having been marked filed as of July 24, 1976, while the second appears of record dated December 2, 1976. To be more specific, the latter motion requested intervention by the appellants as a class pursuant to CR 23.01.

■ Laches is generally considered to be a shield of equitable defense rather than a

sword for the investiture of legal title, 27 Am.Jur.2d *Equity* § 152 at 687, 688, but if a defendant seeks affirmative relief by cross-bill, the defense of laches is as applicable to him as though he had proceeded by original bill. 30A C.J.S. *Equity* § 113 at 26, 29. Since appellants requested affirmative relief, namely, that they be declared to have one-half interest in the land, and since we perceive no great distinction between the mechanism as to how they asked (either by cross-bill or intervention as a class), then the doctrine would be applicable to them. However, at 27 Am.Jur.2d *Equity* § 174, at 719, 721 we note:

> It has been held that the burden of proving laches is on the one asserting it, and that it must be proved by clear and positive evidence. This has been said to be particularly true where the effect of the application of the doctrine would be to divest one of the ownership of land. Where laches is regarded as an affirmative defense it is accordingly held that the burden is on the party asserting it to prove its essential elements. There is also authority that where courts of equity act by analogy to statutory limitations of actions at law, the burden of proof may depend upon whether or not the statutory period has expired—that is to say, where suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show circumstances constituting laches, whereas where the suit is brought after the statutory time, the plaintiff must plead and prove that laches does not exist.

There is also some doubt as to whether one holding in privity of title with another may plead laches in asserting and taking possession of that interest. 30A C.J.S. *Equity* § 114 at 33.

As heretofore mentioned, there is also absolutely no proof of value addressing the issues herein adduced by either of the parties. Moreover, there is no evidence of what duty appellants had to bring any action whatsoever because there is nothing in the record to reflect that they knew of the previous litigation or that appellees were asserting a right to *all* the land. It could be said that Martin's heirs should have brought an action to determine the interests of the parties as well as Richard's.

Appellees rely heavily upon two deeds, one dated in 1853 and the other 1885, which purport to convey certain interests in the land to Martin from some of the heirs of Richard. No allegation is made that Richard executed either one of these documents and only a copy of one of them appears in the record and that is by way of an exhibit attached to the intervening complaint. CR 23.03 demands that the trial court "by order" rule upon the maintenance of an action brought as a class and since none was entered here, then that exhibit is not properly before the trial court. Such being the case, that document cannot be used as a foundation for a finding of fact.

There is some discussion by way of brief and the court takes judicial notice of the fact that the Monroe County records were destroyed in whole or in part in 1865 and again in the 1880's. With respect to destroyed documents, in relation to the doctrine of laches, we invite attention to 30A C.J.S. *Equity* § 121 at 73, 74.

This cause is reversed and remanded to the Monroe Circuit Court with directions to make the appropriate determination pursuant to CR 23.03 and if the court finds that the procedure thereunder is proper, then require the parties to present sufficient proof to make proper determination of the issues presented.

All concur.