Judge Ewing
delivered the opinion of the Court.
The administrator of Swan filed his bill alleging that, on the 9th of November, 1821, Lazarus Powell executed his note to the intestate, payable one day after date, for the sum of one thousand and forty-two dollars sixty-three cents; that it was still unpaid; that the signature and seal had been tom off, by Powell, or by some casualty, so that it does not appear in what year it was executed.
It is also charged, that Harrison Powell was indebted to his intestate, in the sum of about four hundred dollars; that the note was surrendered up, on Lazarus Powell’s assuming to pay the debt, which still remained unpaid. The mutilated note is exhibited, with certain figures indorsed on it, with the affidavit of James Swan, deceased, that the note was still unpaid, and a prayer for a decree for both sums, with a prayer for general relief,
Decree of the court below, and appeal.
An answer, which is specific and positive as to some minor facts, while, as to others, of more recent date and of more importance, it speaks in doubting, qualified terms, giving the respondent’s present impressions &c. is calculated to cast doubt and suspicion upon his whole defence.
*2 The answer of Powell denies the allegations of indebtedness on both scores; and professing to give a detailed account of the origin of the note in question, and the manner of its payment, alleges that, in the year 1808, the respondent borrowed of the complainant’s intestate, one thousand dollars, payable in four years. That he had paid the interest in advance, and had paid off and lifted the note, and exhibits it in his answer. That large sums in usury had been exacted from him, and, as evidence thereof, exhibits a note of one thousand seven hundred and eleven dollars sixty-three cents, payable one day after date, and dated the 30th of July, 1819, executed by him to Swan, with his name torn off, indorsed upon which are various calculations in figures, a part of which seems to have been mutilated by a slip tom off the paper.
That on the 9th of November, 1821, there was a settlement between the parties, in which he admits that he was to take up the note on Harrison, and that the balance due amounted to the sum mentioned in the mutilated note set up in the bill. And then alleges, that “after this, the impression on his mind, at this time, is, that he proposed to give a note he held on G. Carter for nine hundred dollars, and the balance in money, and take up the note set up in the bill;” which was accepted by Swan, and the note taken up and destroyed. That Swan afterwards became dissatisfied, and he took back Carter’s note, and executed his own note to Swan for the amount; upon which judgment has been recovered against him at law; and, by cross bill, he prays an injunction against the whole amount, on the ground of usury.
The answer to the cross bill, denies positively the usury, and every other material allegation.
The Circuit Court gave a decree in favor of Swan’s administrator, for the amount of the mutilated note, and dissolved the injunction against the judgment at law, with damages and costs. From which Powell has ap-appealed to this Court.
The answer of Powell is evasive and disingenuous, and is well calculated to cast a cloud of suspicion over *3 his defence. After detailing facts more ancient, and less calculated, to make a lasting impression on the mind, with apparent confidence and precision, he alleges, as to the payment of the mutilated note, that it is his present impression that it was paid in the note on Carter, &c. And after setting out in detail the manner in which the note originated, and his impression of its payment, he concludes by the use of the following language: "if ever said note was given by said respondent
An ans’r in ch’y admits the execution of a note, the signature of which had been torn off, but alleges that the note had been paid: the onus probandi to show the payment, is upon the respondent.
The fact, that the promisor’s name has been taken off a note, affords strong presumptive evidence of its payment—if the note, in that condition, is in his possession; but if the note remains in the possession of the payee, that fact repels the presumption.
The term impression, in the statement of the most material matter of defence, which could not well have escaped the recollection of the respondent, seems strongly to indicate, that it was thrust in as a salvo to the conscience; and the concluding words strongly impress the mind with the belief, that he was striving to fabricate a successful defence, without much regard to the truth of the ground assumed.
Assuming that the answer admits the due execution of the note, which cannot be questioned from the prior detailed statements it contains, and placing the defence on. the allegation of payment, the onus probandi, to establish the fact of payment in this, as in all other cases, lies upon the respondent. This is attempted to be made out by two grades of evidence: first — by presumption arising from the fact, that the name is torn, off; and, secondly—by the proof of witnesses.
As it is customary for individuals when they pay off a note, to take possession of it, and tear off their names, had Powell the possession of the note in the case before the Court, it would create a strong presumption in favor of its having been discharged. But as it is unusual for notes that have been discharged to be left in the possession of the promisee, the fact of possession, in this case, by Swan, unaccounted for, or explained — especially when it is considered, that a note may be, and often is, mutilated by casualty or design, in the hands of the promissee — repels the presumption of payment, based on this fact. The possession of an acknowledged genuine note, raises probably as strong, or stronger, presumption in favor of the possessor’s right to demand its payment, without the ability to account for its mutilation, as the *4 fact of its mutilation will create in favor of its payment, without accounting for its possession with the promisee. If paid, it was probably lifted; and if lifted, how has it gotten back into the possession of Swan? As the burthen of proof lies on the payor, he should account for. this circumstance. He has wholly failed to do so, or to show that he ever had possession of the note after its, execution.
Circumstances in the character and condition of a witness; evasions in his deposition, and statements inconsistent with facts established in the case—the whole deemed sufficient to render his deposition unworthy of any credit.
Statement of circumstances and facts, appearing in the record, from which a conclusion results, satisfactory to the court, that the note upon which the bill, in this case, is founded, had not been paid, altho’ the signature had been torn off, & the def’t alleges, as his impression, and one witness testifies, that it had been raid, in a specified manner.
*4 When the parol proof is scrutinized, it falls as far short of satisfying this Court, that the payment has been made.
The deposition of Harrison Powell is taken, who, from the name, is probably related to the respondent, and who, from proof, is of doubtful character. He deals in generalities throughout; seems to be a willing witness, and disposed to sustain the respondent’s defence, and is contradicted by the facts of the case, as will hereafter be shown.
He says he was present when the mutilated note was, given; that he was owing Swan at the time; and his note was lifted by Lazarus Powell, and the amount included in the mutilated note; that afterwards, the note was lifted, and Carter’s note assigned to Swan, and the balance paid in money. He does not recollect the amount of, money paid, nor the amount of Carter’s note. And in the subsequent part of his deposition, in attempting to make out that all the note was usury as acknowledged by Swan, he equivocates and contradicts himself.
The depositions of Nathaniel and Henderson Powell were taken, but prove nothing entitled to any weight upon this point.
The testimony of Harrison Powell, as well as the whole defence set up by Lazarus Powell, are contradicted by pregnant circumstances in the case.
An estimate of the legal interest upon the note of one thousand dollars, executed for borrowed money, in 1808, with a small addition for interest upon interest notes, up to the date of the note of one thousand seven hundred and eleven dollars sixty-three cents, will make the amount of that note. And if interest be calculated on that note, up to the 9th of November, 1821, when it is *5 admitted the settlement took place, it will produce, within a fraction, the precise amount of the note of nine hundred dollars, assigned on Carter, and also the amount of the mutilated note.
Though payments are alleged, and attempted to be proven, no proof is adduced establishing the payment, in fact, of the note for one thousand dollar's, or interest, or of the note of one thousand seven hundred and eleven dollars, sixty-three cents, or interest, or any part of them. And though Harrison Powell was present, and was a subscribing witness to the mutilated note, which is alleged by the respondent to have been given upon a settlement of the last note, and as the balance due on the same — he is not asked, and cautiously evades making any statement of its payment, or how, or when, or in what, the payment was made. Its payment is left wholly unaccounted for by proof.
And a recurrence to the figures endorsed on the note, though in part mutilated, will satisfy the least suspicious, that the note was settled and paid off by the note on Carter and the mutilated note executed by Powell.
The interest seems to have been calculated, which was made to amount to two hundred and thirty-one dollars, which, added to the principal, produces precisely the amount of the mutilated note and the note on Carter. And, though it is not distinctly to be perceived, as a part of the figures are torn off, yet enough is left to make it pretty evident, that nine hundred dollars, presumed to be the note on Carter, was deducted from the aggregate, leaving precisely the sum for which the mutilated note was executed. And which, in part, is corroborated by the recollection of Hail, who saw the note in the possession of Powell, before the figures were mutilated.
From this, it is clear, that the said note was settled and paid off exclusively by Carter’s note and Powell’s note for the balance, and in no other manner, and that the note on Carter was assigned, at the same time that the mutilated note was executed, and not afterwards, in discharge of it—as is falsely alleged by the answer and the proof—but in discharge of a part of the large note of one thousand seven hundred and eleven dollars sixty-three *6 cents, and interest. And that the note upon which judgment was recovered, was afterwards given in lieu of the note on Carter, which was afterwards given back, by Swan.
Besides, there is strong ground to suspect, that the name was tom off the note by Powell himself, unobserved by Swan. It is proven that Swan was a credulous, unsuspicious man, and when he had confidence in another, which it is proven he had in Powell, to an unbounded extent, he was in the habit, without scruple or suspicion, of submitting his papers to his free inspection, at any time, when asked. No one had an interest in mutilating the note but Powell, and in the several settlements which they had, none had a better opportunity to mutilate the note.
There is another circumstance which strongly fortifies this conclusion.
The note upon which judgment is recovered, was, before the death of Swan, placed in the hands of D. Hail, for collection, who visited Henderson county—Powell’s place of residence, and presented it to him, demanding payment. Powell contended that he had paid the note, and would satisfy Hail of the fact, and produced to Hail two receipts, covering nearly the whole amount, purporting to be signed by Swan, one dated the 15th day of April, 1824, the other dated the 3d day of June, 1829.
The first purports to be a receipt by the hands of Harrison Powell, of eight hundred and seventy-five dollars, in part discharge of a note of nine hundred and ten dollars, &c. And after, giving a full and accurate description of the note upon which the payment was made, contains this remarkable phraseology: “I am to credit said note for that amount, as I hold no other note against Powell only the one that I am to credit." The other receipt is for one hundred and eighty dollars—which the old gentleman is made to say he thinks, is about the balance of the bond he holds on Powell—"being the only bond, he holds on said Powell." Hail was permitted to take a copy of the receipts to exhibit to Swan, who lived in Simpson county, and exhibits them in his deposition.
These receipts were never afterwards produced or re *7 lied on by Powell, or even an allegation made that he had paid the note or any part of it; but his defence in his answer is made exclusively to turn upon a charge of usury against the whole note. And a letter of Powell to Swan, is produced, in December next after the first receipt is made to bear date, stating that he had been informed by his brother, that Swan wanted his money, making many apologies for his having failed to pay him, and stating that he had, through misfortune, been compelled to pay about six thousand dollars, since he saw him, which he had done without sacrifice of his property; that he was not broke, but that his property had been valued that year at upwards of forty thousand dollars. That what he owed him was safe; that he did not owe above four hundred dollars, except what he was apprised of, and if he lived, he expected the next season to be able to pay him what he owed him. From which it is evident, that the receipts were forgeries, fabricated with the view of defrauding Swan out of meritorious demands, but which he had not the hardihood to produce in Court in his defence. And that, knowing that his name was torn off the other note, but fearing that he could not successfully rely upon that as a bar to its recovery, he availed himself of the opportunity to insert, in the forged receipts, over the signature of Swan, the latter sweeping conclusive clause, that he held no other notes against Powell.
Evidence of the confessions of a party, detailed by a single witness, are but little to be relied upon, unless they are reasonable, or supported by circumstances. And — The testimony of a witness who merely states his understanding from what he had heard a party say, (not giving the words, or their substance,) is entitled to no weight—especially, if he appears to be “a willing witness” and disposed to make his statements in broad and general terms.
And it is worthy of remark, that the pliant witness, Harrison Powell, is made to figure in one of these forged receipts, as the person by whose hands the payment was made.
Taking all these circumstances together, there is no foundation, in the opinion of this Court, for the alleged payment of the mutilated note.
In relation to the charge of usury, the testimony is general, unsatisfactory and inconclusive.
Harrison Powell is the witness again resorted to, and is the only one who proves any thing bearing any weight *8 upon the point. He says in one place, that, from what he understood from both parties, all the note was usury, except his own note which was included, amounting to about four hundred dollars. In another place, upon cross examination, he says, “the bigger part, from what I could understand from the two men, was what I should call usury.”
In another place, he says, “I believe it was all usury, and if it was not, it was a very small sum.” This display of willingness to depose in broad and general terms, connected with his prevarications and contradictions hi the foregoing statements, as well as in other parts of his deposition, entitle him to but little credit.
But he states only his understanding of Swan’s admission, which is but the conclusions of his own mind, and not a statement of the confessions made by Swan. But if his statement was subject to no objection on this score, it is a well established rule of evidence, that the confessions of a party detailed by the evidence of a single witness, is but little to be relied on, unless the tale be reasonable, or be corroborated by other circumstances. It is that character of testimony most usually resorted to, to cover over a falsehood, and is most easily misunderstood, fabricated or perverted, through mistake or design.
The tale is unreasonable, as it is not to be presumed, that Swan would have voluntarily made a confession so manifestly against his own interest, without color of grounds for so doing; and it is wholly unsustained, by a single corroborating circumstance, but, on the contrary, impugned, by many circumstances in the cause, and especially by the estimate before made of the legal interest upon the notes, connected with the fact of an entire want of proof as to any payments in fact.
It is, therefore, the opinion of the Court, that the decree of the Circuit Court be affirmed, with damages and costs.