## Richard Ritter, Incorporated v. Morris Hess & Company

(Decided December 8, 1925.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Evidence—Party Cannot Make Evidence for Himself by His Own Letters.—Party cannot make evidence for himself by his own letters.

2. Evidence—Whole Correspondence Held Admissible, where Just Effect of Plaintiff's Letters Determinable Only when Read with Defendant's Letter which he Answered.—While defendant's statements relating to transaction without plaintiff's answers thereto

would be inadmissible in his behalf, whole correspondence held admissible, where just effect of plaintiff's letters could only be determined when they were read in connection with defendant's' letter, which he answered.

3. Appeal and Error—Supreme Court will Not Disturb Finding of Chancellor on Facts.—Supreme Court will not disturb finding of chancellor on facts, where on whole record mind is left in doubt as to truth.

4. Sales—Evidence Held to Support Finding that Transaction whereby Plaintiff Received Hides for Tanning and Delivery to Another was a Sale.—Evidence held to support finding that transaction by which plaintiff received from defendant hides for tanning and delivery to another, in view of practical construction by parties, was a sale.

BURTON VANCE and DUFFIN, RAY, VANCE & DUFFIN for appellant.

B. S. WASHER for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

Richard Ritter, incorporated, is a Louisville corporation engaged in tanning. Morris Hess & Company is a New York corporation doing business as a dealer in hides. The former brought this action in equity against the latter, alleging that on March 2, 1920, the defendant entered into a contract with the Superior Welting Company of Louisville, Kentucky, by which it sold to the Welting Company for future delivery, 1,000 tanned hides, suitable for the manufacture of welting and of a quality superior to a certain sample, and that the defendant employed the plaintiff as a tanner to tan certain Salvador hides, which it undertook to send to plaintiff from New York as soon as practicable thereafter and arranged with plaintiff when the hides were tanned by it to deliver the leather to the welting company in execution of its contract with it, and agreed to pay plaintiff for its services in tanning the hides 32c a pound; that the hides were shipped, weighing 22,445 pounds and were tanned by it and the leather was tendered to the Superior Welting Company in discharge of the defendant's contract with that company; that the welting company refused to accept the leather, or any of it, and the defendant had refused to pay plaintiff for tanning the leather. Judgment was prayed for $7,802.28, amount due plaintiff under the contract, and that its lien on the leather be enforced.

The defendant answered denying the allegations of the petition, and later filed an amended answer in which it pleaded that it had sold the hides to the plaintiff and that the plaintiff had failed to pay for them as promised, and judgment was prayed on the counterclaim for $9,430.44. A large amount of proof was taken, and on final hearing the circuit court entered judgment in favor of the defendant on its counterclaim. The plaintiff appeals.

The question presented on the appeal is only one of fact. Mr. Ritter, who was 'in charge of the Ritter corporation, and Mr. Bodenschatz, who had charge of the Welting Company, both testified emphatically that the contract was made at the office of the Welting Company, and was as alleged by the plaintiff in his petition. On the other hand Mr. Hess and his son, Harry Hess, both testify equally emphatically that the contract was as set out in the amended answer. It is earnestly insisted for the appellant that Harry Hess was not present when the contract was made, as shown by the testimony of Ritter and Bodenschatz. It is also insisted that Harry Hess testifies that the contract was made at the office of Bodenschatz while his father testifies that it was made on the street after they left Bodenschatz's office. There would be much force in this in view of the fact that it' is shown that Ritter declined to buy the hides, saying that he had not the money to pay for them, if the evidence stopped with merely what occurred in Louisville. On March 11, 1920, Hess wrote Ritter from New York inclosing the bill of lading for 1,232 hides. The bill of lading inclosed shows that the freight, $228.88, was to be paid by Ritter. On the same day Hess wrote Ritter a letter inclosing an invoice for the Salvadors, saying the lot contained a few more hides than 1,200, but it was not good policy to hold them back; that they had to pay dock charges and to pay 6c a hide for trucking and besides $15.00 for loading, adding these words: "As you well understand we are only working on a commission basis. We came to the conclusion to charge you only half of the entire outlay, which we trust you will more than appreciate." On March 20th Ritter acknowledged the receipt of this letter, saying that the weight came out all right "but we only counted 1,230." He made no objection to paying freight and no objection to paying half the expenses in New York and made no reply to that part of the letter stating that Hess

was doing business on a commission basis. The invoice which Hess inclosed was the usual bill of sale, having at its head the words "Sold," "Terms net cash," putting the hides at $9,385.89; "half your share cartage and loading," $44.55; total $9,430.44. No objection was made to the invoice as a bill of sale. Nothing further passed between the parties about this matter until Ritter wrote Hess on July 17, this:

"We wish to say in regards to the Salvadors that we bought from you for the Superior Welting Co. turned out very bad. Some of them was not worth tanning but nevertheless we put them through, but if we would of bought them for ourselves we would of put them into glue scrap. Some were very hard. We judge about four or five of them will never tan, but we must say some in the lot were very nice and are turning out all right. These will start to come out next month and no doubt you will not have to wait much longer for your money."

On July 19, Hess replied to this letter as follows:

"In reference to the Salvadors, we are really more than surprised at what you state in your letter. Of course, you know you have received quite a large percentage of culls which naturally could not come out as well as a good hide, but in general a Salvador is the best hide coming into this country.

"We also note that we will not have to wait much longer for our money. Of course, if you are not in a position to pay the bill at one time, we will be glad to accept part payments."

Nothing more was said until August 16th, when Hess wrote this:

"We were led to believe by your favor of July 17 that we would receive a check from you in the near future, but failing to see our expectations realized, we are writing these few lines to ask you to kindly mail us a remittance, as we have several heavy bills to meet. We think we have not pressed you at all, and would not do so now if we did not need the money.

"Your prompt attendance to this will be considered a personal favor."

To this Ritter made this reply:

"In reply to yours of the 16th inst. beg to advise we are just beginning this week to finish up the Salvadors and wish to state that some of them are turning out very bad. We are very much afraid that Mr. Bodenschatz is going to kick on this lot of leather.

"In regards to the check, we will mail you same just as soon as the Welting Co. turns it over to us."

On August 19 the Superior Welting Company wrote Hess this letter:

"Mr. Ritter has just sent us the first lot of Salvadors finished into welt leather and in looking over them the writer finds that this class of stock is absolutely unsuitable for welting. While we cannot give you the details of this matter by letter, we would suggest that you come to Louisville at once and take this up with us in person. Kindly advise us by return mail or wire when you expect to come."

It is unnecessary to quote the subsequent correspondence, which shows that each of the parties then took the same position they afterwards testified to.

While it is true that a party cannot make evidence for himself by his own letters, there is no better criterion of what the parties meant by a contract than what they did under it, and while Hess' statements without Ritter's answers to them would be inadmissible in his behalf the whole correspondence is admissible, for the just effect of Ritter's letters can only be determined when they are read in connection with Hess' letter which he answered.

It is a settled rule of this court not to disturb the finding of the chancellor on the facts, where on the whole record the mind is left in doubt as to the truth. Taking the correspondence between the two men into consideration and all the testimony as to what passed between them in Louisville, certainly anyone must concede that the mind is left in doubt here as to the truth. It is true that Ritter says that his use of the words, "we bought from you," in his letter of July 17 is a mistake, due to his ignorance. But these words correspond with his action in accepting the bill of sale without protest and in paying one-half the charges in New York and also the whole of the freight to Louisville. For these charges

were only payable by him if he had bought the goods in New York and had them shipped to him. On the whole case the chancellor's judgment cannot be disturbed on the facts.

Judgment affirmed.