## Ray's Ex'r v. Bridges et al.

(Decided Feb. 14, 1933.)

GARDNER & McDONALD for appellant.

F. B. MARTIN and O. H. BROOKS for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

H. L. Bridges instituted this action in equity against the First National Bank of Mayfield, Ky., as executor of the estate of T. J. Ray, deceased, and in his petition alleged, in substance, that on August 23, 1922, he and his son, Chester Bridges, executed and delivered to T. J. Ray their joint note for $650, payable twelve months after date and bearing 8 per cent. interest from date; that thereafter on the — day of ——, 19—, and

after the maturity of the note, he, at his home, paid to T. J. Ray the full amount of the note, and all accrued interest thereon; that the payee represented to him that he did not have the note in his immediate possession, but had it in his desk at his home, and would deliver same to him on a later date; that, at the time payment was made, he demanded the surrender of the note, and on later occasions both he and his son, Chester Bridges, made demands upon the payee of the note to surrender it; that the payee failed and refused to surrender the note, and after his death, which occurred on August 27, 1929, it passed into the hands of his executor as a part of his estate; that he made demand upon the executor to surrender the note, and accompanied same by his own affidavit supported by the affidavits of Chester Bridges and R. C. Vincent that the note had been paid in full, but his demand had been refused by the executor. He asked for judgment relieving him from all liability on the note, adjudging same to be fully paid, and requiring the executor to surrender same to him.

By its original answer, the executor merely alleged that the note referred to in the petition came into its hands as executor, but that it had no knowledge or information as to whether it had been paid or whether demand had been made upon the payee for its surrender as alleged in the petition.

By amended answer, counterclaim, and cross-petition it is alleged that on August 23, 1922, plaintiff H. L. Bridges, together with C. L. Bridges and Chester Bridges, executed and delivered to T. J. Ray a note whereby they promised to pay to him the sum of $650, with legal interest from date until paid; that the note was due and no part thereof had been paid except interest to August 23, 1928, as shown by written credits indorsed on the back thereof; that C. L. Bridges and Chester Bridges were necessary parties. It made its answer a counterclaim against plaintiff and a cross-petition against C. L. Bridges and Chester Bridges, and asked for judgment against the makers for the amount of the note, with interest.

By reply, H. L. Bridges admitted the execution of the note referred to and filed with the amended answer, but denied that no part of same had been paid except interest to August 23, 1928, and alleged that same had been paid in full as set out in the original petition. By

a joint answer to the counterclaim and cross-petition of the executor, C. L. Bridges and Chester Bridges admitted the execution of the note, but alleged that same had been paid before the institution of the suit, and they adopted the allegations of the pleading of H. L. Bridges relative to such payment.

Proof was taken on the issues as thus completed, and on final hearing the answer and amended answer, counterclaim, and cross-petition of the executor were dismissed, and it was adjudged that H. L. Bridges was entitled to the relief sought in his petition, and that the note for $650 executed August 23, 1922, signed by him and C. L. Bridges and Chester Bridges, had been paid and settled in full, and should be surrendered to plaintiff, and that he be permtited to withdraw same from the pleading. The executor has appealed.

In the main, argument in briefs by counsel for the respective parties relates to the sufficiency of the evidence to support the chancellor's finding, and, incident to that, question is made to competency of some of the evidence.

Chester Bridges, one of the makers of the note, gave his deposition and detailed conversations and transactions between his father and decedent and also between himself and decedent as supporting their plea of payment. The court sustained exceptions to the deposition of this witness on the ground that he was disqualified as a witness under subsection 2 of section 606 of the Civil Code of Practice, which provides that:

"No person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by * * * one who is * * * dead."

It is urged by counsel for appellee that the court erred, and the evidence of this witness is competent, first, because at the time he gave his deposition he had not been made a party to the action; second, because his liability was only contingent, and he was not in fact testifying for himself or in his own personal interest; and, third, because his disqualification, if any, was removed when an officer of the executor bank later gave his deposition.

The liability of the makers of the note was joint and several, and their interests were identical. If the

father was successful with his suit, the sons also would be relieved of their liability. While testifying for the plaintiff, the witness was at the same time testifying for himself.

Under this provision of the Code, a witness is incompetent to testify for himself concerning transactions and conversations with deceased persons when he has a real, direct, and certain pecuniary interest adverse to the estate of such decedent. Hicks v. Oak's Adm'r, 233 Ky. 27, 24 S. W. (2d) 917; Trevathan's Ex'r v. Dees' Ex'rs, 221 Ky. 396, 298 S. W. 975. And the disability attaches not only to parties to the action, but to all persons who are directly interested in the result of the litigation. Apperson's Ex'x v. Exchange Bank, 10 S. W. 801, 10 Ky. Law Rep. 943; Smick's Adm'r v. Beswick's Adm'r, 113 Ky. 439, 68 S. W. 439, 24 Ky. Law Rep. 276.

The trust officer of the bank who was called in rebuttal merely testified that no note against appellees other than the one in controversy came into the hands of the executor. It is alleged and not denied that the note in controversy did go into the hands of the executor. There was some evidence as to other indebtedness in no way involved in this action. The contention that the disability of the witness Bridges was removed by reason of this rebuttal testimony is, in the circumstances, wholly without merit.

Besides Chester Bridges, appellees offered only two other witnesses whose evidence in any way tends to support their plea of payment. R. C. Vincent, who married a sister of decedent, testified that the latter would often leave notes with him for collection, and that at one time, while sorting out notes to give him for collection, Dr. Ray said, "Here is a note against my old friend Henry Bridges, this is paid or practically paid," and laid the note back. He could not fix the date of this transaction, but indicated that it was just before Dr. Ray left for Mississippi either in the year 1928 or 1929. He did not see nor did decedent tell him the amount of the note.

A. B. Ray, a nephew of decedent, testified that he nursed him for about six weeks immediately before his death, and during that time he had occasion to look at his notes and papers once or twice; that, when looking

for a government or insurance check for about $82, he put his uncle in a chair and pulled him over to a safe where he kept his papers, and, while making the search, his uncle came across H. L. Bridges' note and said, "There is Henry's note, I must give it to him the next time he comes down here." When asked if it had been paid, he replied in the affirmative, and, when further asked why he did not mark it "Paid," he replied that he would give the note to him the next time he was down there. He testified that this occurred about May, 1929. He further testified that his uncle said Henry was wanting the note, but he thought he had given it to Bob Vincent. He was shown the note in controversy, and testified that it was the same note he saw when his uncle was searching for the check.

In opposition to the plea of payment, appellant introduced two witnesses, Mrs. Fannie Harrelson, nee Yarbrough, who testified that continuously for about seven years prior to the death of Dr. Ray she had been his housekeeper; that A. B. Ray stayed with his uncle for about eight days in April, 1929, but was not there and did not wait on or nurse him at any time thereafter; that in May or June Dr. Ray asked her to telephone Mr. Bridges to come down there; that, when Mr. Bridges came, she heard Dr. Ray say, "Mr. Bridges the reason I have called you down here I want to see if you can't pay me what you owe me." Mr. Bridges replied, "I don't think I could do it," and, after asking what the Bridges boy was doing, and on being told that he could not help, Dr. Ray said, "Well Henry if you haven't got the money and can't pay me I know your financial circumstances well enough to know you can get the money and pay me, you have been owing me long enough. I am sick and need the money * * * look around and see if you can't get the money." That Bridges replied, "I don't think I can. I don't know where I would get it."

Sam Harrelson, who lived near the home of Dr. Ray, and who married his housekeeper subsequent to his death, testified that he waited upon and nursed Dr. Ray at different times for some months previous to his death; that Dr. Ray had promised to pay him some money, and one night, when he told the doctor he had not been able to get any money elsewhere, Dr. Ray said that Mr. Bridges owed him some money and he would

have him called down in the morning; that he stayed and waited on the doctor during the following night, and just before he left Dr. Ray said, "I called Henry down here but it did not do any good." He testified that this occurred about a week before Dr. Ray fell and broke his leg in the first part of July prior to his death.

It was stipulated and agreed between the parties that H. L. Bridges kept an account at the Exchange Bank of Mayfield, Ky., and a copy of the ledger sheet of the account is filed in the record showing transactions between July 29, 1924, and May 23, 1930, and also that he had an account with the First National Bank, and a copy of its ledger sheet showing the account and transactions between August 23, 1927, and August 7, 1930, was filed.

If the decision of this case was made to turn wholly on the evidence of these four witnesses, the substance of which we have recited, it is apparent that rules respecting the weight to be given to a chancellor's finding would forbid interference upon the part of a court of review, since it could not then be said that the judgment was against the preponderance of evidence. To say the least, it would be a matter of doubt. But, wholly apart from this evidence, we find in the hands of the payee an uncanceled note without any check, receipt, or other written evidence of payment, except credits for interest which seem to have been promptly indorsed on the back thereof.

In the absence of proof to the contrary, the presumption is that a note found in the possession of the payee has not been paid. Young v. Bank of Sweetwater, 187 Ky. 71, 218 S. W. 463; Downing v. Whitlow, 211 Ky. 294, 277 S. W. 262; Powell v. Swan's Adm'r, 35 Ky. (5 Dana) 1.

In the case of Powell v. Swan's Adm'r, the note was in the possession of the payee, but the signature of the maker and the seal had been torn off. There was a plea of payment, and it was adjudged that the fact that the signature had been torn from the note raised the presumption of payment, but it was held by the court that the possession of the note by the payee and the presumption arising therefrom repelled any presumption of payment.

As a general rule, the chancellor's finding will not be disturbed where the proof is contradictory and on

the whole record the mind is left in doubt on a question of fact, Ritter, Inc., v. Morris, Hess & Co., 211 Ky. 730, 277 S. W. 1016; Long v. Howard, 229 Ky. 369, 17 S. W. (2d) 207, but such finding is not controlling on appeal if against the preponderance of the evidence, Walker v. Walker, 228 Ky. 357, 15 S. W. (2d) 298; Insurance Co. of North America v. Evans, 229 Ky. 613, 17 S. W. (2d) 711. If the appellate court, in reviewing the material facts, becomes convinced that the chancellor erred, the judgment will be reversed. Faulkner v. Headrick's Adm'r, 213 Ky. 692, 281 S. W. 813; Lewis v. Shell, 205 Ky. 624, 266 S. W. 254.

Considering the fact that the note was in the hands of the payee, in connection with the proven facts and circumstances, we are constrained to hold that the evidence preponderates against appellee's claim of payment.

Wherefore the judgment is reversed, and the cause remanded, with directions to enter judgment in conformity with this opinion.