SAMUEL HOLMES, Appellant, *v.* WILLIAM STUMMEL, Appellee.

APPEAL FROM MARSHALL.

Where a party is bound by contract to perform certain work, it is presumed that if any part of it is to be omitted, there should be a reasonable deduction from the contract price for the work omitted, unless a different intention is shown by the evidence.

THIS suit was commenced at October term, 1853, being an action of assumpsit; damages claimed, $300.

The declaration in the first count was for grubbing and piling the brush on fifty acres of land in said county, and for cleaning done thereon by the said plaintiff for the said defendant, and at his special instance and request; and defendant promised to pay, &c.; second count, general account for work and labor. Plea, general issue.

The bill of exceptions shows the following facts:

That the plaintiff, to maintain the issue on his part, produced as a witness Thomas Wier, who testified that plaintiff grubbed for defendant about fifty acres of land, in 1852 and 1853, finishing about the 15th April, A. D. 1853, being something over a year in doing it; that the work was worth ten dollars per acre; that he heard no contract about the grubbing; that the land on which it was done was taxed to Sarah Holmes, the defendant's wife; that William White, defendant's father-in-law, appeared

to have possession of, and exercise control over, the land; that Stummel worked on the land after defendant returned from California, and that Holmes knew of his doing so. (Holmes admitted that he was the owner of the land on which the grubbing was done.) That, about a year after the land was grubbed, defendant built a house on it. On cross-examination he stated, that on the land there was between one and two acres in a ravine not grubbed; that he saw a written contract in relation to the grubbing in the plaintiff's hands; [that it—the contract— was between William White or Holmes' wife and a man by the name of Ferguson.] The evidence in brackets was objected to by defendant. Having been called out by the plaintiff, it was admitted by the court, and defendant excepted to the admission of the same at the time it was given. Witness further stated that Stummel called on him, showed him the contract, and got him to go and look at the work—grubbing—to see whether it was done according to the contract.

The defendant gave notice to the plaintiff, to produce on the trial a certain contract in writing, which is as follows:

"ARTICLES OF AGREEMENT, made and entered into between William Stummel, of the one part, and Samuel Holmes, of the other part, witnesseth: That said William Stummel has this day agreed to clear, grub and pile the brush, all to be done in good order, on all the land south of the road running from Sandy Creek bridge to John Foster's, that William White bought of Edward Evans, to be done and completed by the first day of April, A. D. 1853; and that the said Samuel Holmes hath agreed to pay the said William Stummel two hundred and twenty-eight dollars for the same—fifty dollars when the work is one-half completed, the balance when done and completed. In witness, we the undersigned set our hands and seals, this April the 13th, 1852.

WILLIAM STUMMEL,
SAMUEL HOLMES."

Plaintiff next called Peter Fogle, who testified that about the middle of March, 1853, Holmes came to the place where Stummel was at work grubbing, and asked him how much he got an acre for grubbing; Stummel made no reply; Holmes asked him how many acres there were in the piece he was grubbing; Holmes said there were fifty-five acres in all; that an Irishman had grubbed five acres, and that and the ravine was to go off from Stummel's grubbing. This was about the middle of March, 1853. Witness was a German, and stated that, at the time of this conversation, he had been about a year in the country, but understood English then about as well as now; that he had worked about a month for Stummel on the grubbing; (said witness gave his evidence a portion of the time in English, and a portion through three interpreters.)

Defendant then called William White, who is his father-in-

law, who testified that he knew the land on which the grubbing was done; that he knew at the time of its being done; that he lived about a mile and three-quarters from the place; that said grubbing was done under a written contract, and that the plaintiff was to have between two hundred and seventy and two hundred and eighty dollars for doing said work; that the work was not well done, by one-half its value; that before September, 1852, he paid plaintiff towards said grubbing between $15 and $20.

On cross-examination, he stated that the way he knew the work was done under a written contract, was, that he wrote the said contract himself; that such contract was between Holmes' wife and a man by the name of Ferguson, and signed by them; he believed Holmes' wife's name was to it.

Defendant then called Edward McKisson, who testified that in April, 1853, he heard a conversation between plaintiff and defendant on the ground where the grubbing was done; that Stummel said that Holmes' neighbors had told him that he, Holmes, would not pay him for his work, and that he was going to quit next day; Holmes told him, Stummel, that when he had finished the grubbing according to the article, his money was ready for him; Holmes asked him to grub the ravine; he said he would not; Stummel, in this conversation, said Holmes had paid him between $90 and $100; witness stated he thought the plaintiff quit grubbing on Monday after this conversation, which was on Saturday, but of this he was not certain.

David Etinger, called by defendant, testified that at last April term of the court, Stummel said, as they, (he, Holmes, Stummel, and some others,) were riding into court, that the lawsuit was costing a good deal of time and money; Holmes said he knew it was, but Stummel ought to have done his work right and finished the job according to the contract, and admitted what he, Holmes, had paid him; Stummel said he knew he ought to, but the job was too hard, or it was too hard work, or something to that effect; Holmes said he had paid him about $90, and he ought to acknowledge it; witness stated that he has seen the grubbing; that it was about half done—not well done.

Theodore Kishner, called by the defendant, testified that he saw a part of the land, about fifteen acres on the east side of ravine, after it was grubbed; that it was not well done—good many stumps left in it.

John Wear, called by the defendant, stated that he had seen and examined the grubbing since it was done, and that in his opinion it was tolerably well done.

The court, at the request of the plaintiff, instructed the jury as follows:

1. If the jury believe, from the evidence, that the plaintiff grubbed fifty acres of land for the defendant, then the jury ought to allow to the plaintiff what the jury believe the grubbing was worth, unless the defendant has proved a valid contract for a less sum, or that he, defendant, has paid for said grubbing.

2. If the jury believe, from the evidence, that the plaintiff did the grubbing in a fair and workmanlike manner, and as well as such kind of grubbing is usually done, the jury ought not to allow plaintiff any less than the contract price, even if a contract price has been proved.

3. If the jury believe, from the evidence, that under a contract between the parties the plaintiff was bound to grub the *ravine*, yet if the jury believe that the defendant released the plaintiff from grubbing out the ravine, then the jury ought not to make any deduction in consequence of said ravine not being grubbed.

4. Unless the defendant has proved a valid subsisting contract between the parties under which the work sued for was done, then plaintiff is entitled to recover from the defendant the value of the work done by him as proved; that to show such valid contract, it must be proved that it was assented and agreed to by both parties, and was for a sufficient consideration.

5. It is for the defendant to prove the existence of the written contract, and unless he has proved it, the plaintiff is entitled to recover for the amount he has proved his labor to be worth.

To the giving of which instructions the defendant's counsel then and there, at the time the same were given, objected and excepted.

The jury found a verdict for the plaintiff for $390. Plaintiff entered a *remittitur* for $90. The cause was tried before HOLLISTER, Judge.

N. H. PURPLE, for Appellant.

S. L. RICHMOND, for Appellee.

CATON, J. We are of opinion that the third instruction asked and given for the plaintiff below, was calculated to mislead the jury, and should not have been given in the terms asked. It is in these words: "If the jury believe from the evidence that under a contract between the parties, the plaintiff was bound to grub the *ravine*, yet if the jury believe that the defendant released the plaintiff from grubbing out the ravine, then the jury ought not to make any deduction in consequence of said ravine not being grubbed." Assuming that, by the contract, Stummel was bound to grub the ravine, and that there is evidence from

which the jury might infer that by a subsequent arrangement between the parties, the ravine need not be grubbed, the implication is, that the parties intended that there should be a reasonable deduction from the contract price for the amount of labor which Stummel was released from performing, unless the jury should further find, that it was also the intention of the parties that there should be no deduction made by reason of the work omitted. The jury would naturally understand, from this instruction, that if Holmes agreed that Stummel need not grub the ravine, the presumption of law is that he intended that no deduction should be made on that account. We think the presumption of law is the other way, and that if he released him from performing a part of the contract, it was upon the implied consideration, that a reasonable amount should be deducted from the contract price, unless the jury should find from the evidence a different intention.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*