## Clausen v. Railey.

(Decided November 14, 1911.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

Partnership Contract—May be Altered by Parties—Consideration.—An agreement of partnership may be altered or changed by the parties, so that the interest of each may be fixed and determined according to their understanding, but there must be some consideration to support the promise on the part of a partner to surrender his interest in the partnership property, and there must be some consideration to support an agreement on the part of one partner that the interest of another shall in any event be given a fixed sum.

CARROLL & MIDDLETON for appellant.

CHARLES H. SHIELDS for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

George C. Clausen, a resident of the State of New York, and Russell Railey were partners in the ownership of a saddle horse called "Hunter Rye." The partnership originated in this way. Mr. Clausen is a fancier of

high-class saddle horses, and has acted as judge at various horse shows in this country and England. Mr. Railey is a breeder and developer of saddle horses. Hunter Rye was owned by Mr. Railey, and because of the reputation of Mr. Clausen as a finished horseman, Mr. Railey desired to have this horse handled by him. With a view to interesting him, on November 1, 1904, he wrote the following letter to Mr. Clausen:

"BUCK RUN FARM.
"Versailles, Ky., November 1, '04.
"Mr. Geo. C. Clausen,
"Port Chester, N. Y.
"My Dear Sir:
"I know you will be surprised to receive a letter of this nature, but feeling convinced that it will be of service to me in the future is why I make you confidentially the following proposition. I have a horse, a bay gelding, six years old, that looks the English Hunter type, rather light waisted, but he is sixteen hands, one inch high, a sharp shoulder, and with a forehead such as you just now and then see—in a word, he can with style and all day long at that any horse in all the land, has a docked tail and carried like he was gingered. At a plain walk, trot and canter he simply stands alone, and while not by any means thoroughly schooled, it will be easy for you in your hands to simply make him great, for you can't hide his perfectly faultless style, and his grand outstanding way of going. Add to all this his absolute soundness makes him a perfectly wonderful subject. I want to make you interested because he is simply great, and will in my opinion carry you back to your first love, namely the black horse you had years ago. I will be glad to have you entertain the following proposition: I will ship him to you in N. Y. C. by Exp. at the earliest chance and at an exp. to you, say $45, you to pay the exp., when he becomes your property to do with as you like, and when sold to give me half of the selling price. You can take your time to sell, one month or one year, or after you have fully tried him, and like him well enough to make me an offer I will accept said offer.
"Yours truly,
"RUSSELL RAILEY.
"So you see I think well of the horse, also you."
After some correspondence following the receipt of

this letter by Clausen, the proposition made him was accepted. The horse was shipped to New York and arrived there some time in November. Clausen took him and began work with him with a view of developing him. He kept him until some time in the year 1908, when he sold him for $600. He did not offer to pay over to Railey his one-half of the proceeds of sale. Thereafter he came to Kentucky and notified Railey that the horse had been sold for $600. A dispute thereupon arose between them, it being claimed by Railey that, under an arrangement entered into with Clausen in February, 1906, he was to have $1,000 for his half interest in the horse. He instituted a suit in the Jefferson Circuit Court to recover this amount. Clausen denied all liability in excess of $300. The law and facts were submitted to the judge without the intervention of a jury, and he entered a judgment in favor of plaintiff Railey for the full amount sued for.

Railey claims the original contract of partnership was modified at the time of their meeting in Lexington in February, 1906; that on said occasion. Clausen said to him, "Railey, I have splendid news for you. I have been offered $2,000 for that horse." That he thereupon said, "Mr. Clausen, in the name of common sense, tell me why you didn't sell him. It is about the full value of any horse, besides I am a partner, I would like to have the money." To which Clausen answered, "Railey, I have a standing offer; I can get it any day I want it, but I can get more; you bide your time and be content, and I will see you get one thousand dollars for your half of the horse, or more." Irvine Railey, a brother of Russell Railey, says that he was present and heard Clausen make the statements relative to the horse and the offer for him, etc., as detailed above. Relative to this conversation, Clausen testified as follows: " 'Railey, why that horse has picked up very much,' The horse was very thin when I got him; I put a lot of flesh on him and put him in good shape. I say, 'I am getting along with him very nicely, and I had an offer on him for $2,000.' I don't know whether I told him at the time who made the offer or not, but I told him so, and I was acting in good faith with Railey. I thought we had a friendly agreement and I might as well tell him what was transpiring. He said, 'Why didn't you take it?' 'Oh,' I said, 'No, I wouldn't take that.' 'No,' I said, 'That is an untrained horse. I would not sell that horse to anybody now.' Then he laughed very loud. 'Well,' he said, 'You know

what my wife said when I shipped you that horse.' I said, 'No.' 'I would like to see any man in the east who is ever going to ride him.' 'Well', I said, 'That is quite a compliment to me after being successful in riding him.' I was still friendly to him however—'If this horse turns out right I think I will get a good price for him, but I will not sell him until he is thoroughly fit, until I can warrant the horse.' "

The correctness of the judgment appealed from depends upon whether or not the contract of partnership was modified or changed in Lexington in February, 1906, when this conversation took place. Accepting the version of appellee Railey as to what was then and there said by Clausen, does it amount to a promise on the part of Clausen that if Railey would not insist upon a sale of the horse he would, in any event, pay him a thousand dollars for his interest in him? It is urged by counsel for appellant that the language used cannot by any fair construction justify such an interpretation, that all it amounted to was a statement by one partner to another that he had been offered two thousand dollars for the horse, but that he was unwilling to take it, that he believed the horse was worth more money, and that by keeping him and developing him further he would get more for him. It will be observed that in that conversation Railey does not claim to have demanded that the horse be sold at that price. On the contrary, he simply says he asked why he was not sold, and he states that Clausen told him the reason he had not sold him was that he was worth more money and that he expected in time to get more money out of him. It is apparent that Clausen did not understand at that time, or at any time, that he had bought his partner's interest in this horse, and Railey's conduct does not justify the plea that he so understood the conversation, else why would he have waited from February, 1906, to the fall of 1908, without demanding his money. He may have been, and doubtless was disappointed that the horse was not sold at that time for $2,000, but if he was then unwilling to let this offer be refused, he should have insisted upon its being accepted, or else upon the partnership being closed. Had he taken such a position he could have either compelled his partner to sell the horse for such offer as they could then get on him, or else buy him out if he wanted to retain him in the hopes of getting a higher price. But this assurance, that if he would bide his time the horse

would be sold for more money, was not an effort on the part of his partner to buy him out, and the language used does not justify this interpretation. According to the contract under which appellant took the horse, he was to have his own time within which to dispose of him, a month or a year, that is, as long as he wanted to keep the horse and train him with a view of enhancing his value, he had a right to do so. The whole matter was left in his hands. Appellant's letter shows that he accepted the horse under the terms upon which he was offered to him, and they were that he should keep him and train him until such time as he should receive a satisfactory offer, when he should sell the horse, the proceeds to be divided equally. Suppose the horse had died a week or month after this conversation took place at Lexington, would appellee have been entitled to a thousand dollars? Clearly not. Or suppose appellant had sold him for ten thousand dollars, would appellee have demanded and been entitled to receive his half thereof? Undoubtedly so. They were equal, full partners. So long as the horse was kept they ran the risk of losing him. Appellant rejected one offer in the hope of thereafter securing a greater price. In doing this he was but exercising a right which the contract clearly gave him, to-wit, to keep him until such time as he should receive a satisfactory offer for him—and he was to be the judge of what was satisfactory. It must be borne in mind that appellee was at no expense whatever for the care, keep and training of this horse. He furnished the horse in his green or undeveloped state as his part of the partnership account. Appellant paid the freight on him to New York and thereafter paid all expense, and the longer he kept him the greater the expense necessarily was; hence it was to his interest to sell the horse at a good price and as speedily as possible. He testifies that the reason he failed to do so was that the horse was a disappointment and did not measure up to his expectations; that the longer he trained him and the more money he spent on him the less valuable he became, and finally he sold him for $600, the best price he could then get; and it is not disputed that this is true.

An agreement of partnership can undoubtedly be altered or changed by the parties, so that the interest of each may be fixed and determined according to their understanding; but there must be some consideration to support the promise on the part of a partner to surren-

der his interest or portion thereof in the partnership property. Likewise, there must be some consideration to support an agreement on the part of one partner that the interest of the other in the partnership property shall in any event be a given fixed sum. It is contended that here the agreement on the part of· Railey to bide his time and not at that time force a sale of the partnership property was a sufficient consideration. Not so, in the face of the contract of partnership. Under its terms Clausen had the right to determine when the horse should be sold. This right was not given to him in the conversation at Lexington. He already had it. Hence, there was no consideration whatever moving from appellee to support the claim now made that appellant then obligated himself to pay him for his half interest in the horse one thousand dollars in any event. Under the contract of partnership and evidence of sale, a judgment of $300, with interest from date of sale, was all appellee was entitled to.

The judgment is reversed and cause remanded for further proceedings consistent herewith.