## Young, et al. v. Cumberland County Educational Society.

(Decided March 18, 1919.)

### Appeal from Cumberland Circuit Court.

1. Appeal and Error—Questions Reviewable—Cross-appeal.—Where certain parties to an action prosecuted no cross-appeals from adverse judgments, on appeal by other parties, the errors could not be reviewed.

2. Contracts—Building Contracts—Measure of Damages for Defective Work.—Ordinarily the measure of damages for defective work under a building contract is the difference between the value of the building as constructed, and what its value would have been if it had been constructed according to the contract; but where the contractor wilfully varies from the contract by using materials not only different from those contracted for, but

wholly unsuitable for the purpose, the measure of damages is the actual cost of reconstructing the building according to the contract.

3.  Contracts—Building Contracts—Damages for Defective Work—Finding—Evidence—Sufficiency.—Where, in an action on a building contract, the owner counterclaimed for damages for defective work, evidence examined and held insufficient to sustain the chancellor's finding that the building was worthless.

PRESCOTT SANDIDGE for appellants.

W. E. MILLER, CHARLES GRAYER, C. R. HICKS and J. O. EWING for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

The Cumberland County Educational Society, a corporation, was organized for the purpose of purchasing a site and erecting buildings thereon to be leased and used as an educational institution. To that end, it purchased eight acres of land in the town of Burkesville and entered into contracts with Charles Grayer to construct a school building for the sum of $7,500.00, and with R. Young to build two frame dormitory buildings for the sum of $5,940.00. After the execution of these contracts, R. Young and C. R. Payne entered into a partnership for the erection of the two dormitory buildings, and later on, Young, Payne and Grayer entered into a partnership for the construction of all the buildings. The grounds and buildings were leased to Payne. Upon the completion of the buildings, Payne moved to and proceeded to conduct the school for two or three years.

Grayer brought this suit against the Cumberland County Educational Society, R. Young and C. R. Payne, and sought a mechanic's lien for the sum of $4,949.00, the balance due under the contract, and for the further sum of $922.02, the amount due for extras. He charged that Young and Payne were in collusion with the Cumberland County Educational Society to prevent him from recovering what was due him, and that they would not unite as plaintiffs. Young and Payne filed a joint answer, counterclaim and cross-petition, denying collusion and asserting their claim and lien for certain balances due. The Cumberland County Educational Society filed an answer and counterclaim, denying the right of

Grayer, Young and Payne to recover, and pleading that it was damaged in a large sum because the brick building was practically worthless. Later on, it filed an amended answer charging a conspiracy between Young, Payne and Grayer to cheat and defraud it out of its money, and asked damages on this account in the sum of $10,125.18. During the progress of the action, Grayer abandoned his original suit and asserted a claim against Young and Payne for 217 days' service at $2.00 per day. On final hearing, the chancellor held that the brick school building was worthless; that there was due Grayer, Young and Payne, under the contracts, the sum of $2,276.07, and also the sum of $702.92 for extras, and rendered judgment on the Educational Society's counterclaim against Grayer, Young and Payne for the sum of $7,500.00, less the sum of $2,928.99. The society's claim for damages of $10,125.18 on the ground of fraud was rejected, as was also Grayer's claim against Young and Payne. Young and Payne appeal.

No cross-appeal has been prosecuted either by the Educational Society or Grayer. Hence, that part of the judgment rejecting the society's claim for fraud and Grayer's labor claim against Young and Payne cannot be reviewed.

Besides other defects which could have been easily remedied, it was shown that a large number of the facing brick was soft instead of hard, and when exposed to the weather disintegrated and ran over the outside wall. Three or four of the directors of the Educational Society testified that, in their opinion, the brick building was worthless. None of them, however, had ever had any experience as contractors or builders and were unable to state whether or not the defective brick could have been removed and good brick substituted. Charles Grayer also stated that the building was in such condition that no one would want to take it. On the other hand, an experienced contractor, in answer to the hypothetical question whether the defective brick could have been removed and hard brick substituted, replied that this could be done at an expense of about $30.00 per thousand for hard brick.

The brick building was accepted and used for the purpose for which it was constructed. Ordinarily, in a case like this, the measure of damages is the difference between the value of the building as constructed

and what its value would have been if it had been constructed according to the contract. Hartford Mill Co. v. Hartford Tobacco Warehouse Co., 121 S. W. 447; Culbertson v. Ashland Cement Co., 144 Ky. 614, 139 S. W. 792; Panke v. Fischer, 48 S. W. 993; Short v. Moore, 43 S. W. 211. However, where the contractor willfully varies from the contract by using materials not only different from those contracted for, but wholly unsuitable for the purpose, the true measure of damages is the actual cost of reconstructing the building according to the contract, Morgan v. Gamble, 230 Pa. St. 165, 79 Atl. 410, and it seems to us that this is the measure of damages applicable to the peculiar facts of this case, since it appears that soft and unsuitable brick were used in the outside walls instead of hard brick as required by the contract. The judgment below was based on the finding that the building was worthless.

Manifestly, if the defective conditions could have been remedied, the building was not worthless. None of the witnesses for the society were able to say this could not be done. On the other hand, an experienced builder gave it as his opinion that the defective brick could have been removed and hard brick put in their stead at a reasonable expense. In our opinion, the evidence was not sufficient to sustain the chancellor's finding that the building was utterly worthless. In view, however, of the fact that the case was not fully developed with respect to the cost of remedying the defective conditions, the ends of justice require that the parties be given an opportunity to introduce further evidence on the question, and no final judgment will be directed.

Judgment reversed and cause remanded for proceedings consistent with this opinion.