## Cassinelli et al. v. Stacy.

(Decided May 12, 1931.)

828

FAULKNER & FAULKNER for appellants.

J. W. CRAFT for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—
Reversing.

This action was instituted by Troy Stacy, as plaintiff, against Peter Cassinelli, as defendant, to recover the balance of $789.33 alleged to be due under a contract between them for the construction of a building at Duane, Ky. The contract consists of the original and two supplemental written agreements signed by the parties. It was provided in the original that for $7,000 to be thereafter paid, Troy Stacy was to furnish the material and labor necessary to complete the building, according to the plan and specifications which are made part of the contract. The contract provided the building was to be constructed under the supervision of

H. A. Spaulding, and to be accepted by him, on a lot owned by Cassinelli. It was agreed in the contract that it was to be a "turnkey" job. By one of the written supplements, the Hazard Lumber & Supply Company was to furnish a bill of material, Cassinelli paying for it and deducting the cost price from the $7,000, the contract price. By a second written supplement, it was agreed "that the second party shall employ first class workmen, and push the work so that the building may be completed with the least possible delay, and that it shall be completed not later than the 7th day of April, 1928." Cassinelli agreed to pay the contract price on its completion and acceptance by Spaulding.

In his original petition, the execution and delivery of the contract, its terms and provisions, are set out, and this further allegation is made: "The plaintiff says that the building was completed in its entirety in a good and first-class workmanlike manner within the time fixed in the contract and supplemental contracts, and that the same has been accepted by Spauling, the engineer for Peter Cassinelli, and Peter Cassinelli, himself, etc."

The original petition was verified. The answer to it was filed May 22, 1928. The amended answer was filed June 27, 1928. On the 12th day of September, 1928, the appellee filed and amended petition wherein he withdrew the allegations of the original petition inconsistent with those in this amendment. In the amended petition this allegation is made: "During the progress of the work under the contract . . . by mutual consent and agreement, between the plaintiff and defendant Peter Cassinelli, certain alterations and changes were made different from the plan and specifications prepared by H. A. Spaulding, architect and engineer . . . such changes and alterations were made at the direction of said engineer of defendant and, defendant himself . . . which are set out in the deposition of plaintiff on rebuttal. . . . " Substantially the same allegations were made in the reply to the amended answer and counterclaim. The replies to the original and amended answer and counterclaim were taken as controverted of record. A counterclaim was presented in the original and amended answers, wherein it is charged that Stacy was careless and negligent in the construction of the building; that it was not completed as provided in the original and supplemental contracts and according to the plan and speci-

fications. It is charged therein that the foundation gave way, causing the floor to be "unlevel." The concrete wall in the front of the building, by the plan, specifications, and contract was to be 2 feet thick. It was constructed one foot thick. The roof of the building leaked; the tiles in the walls of the building, the subfloor, the front basement wall, the secondary wall across the building, the 12-inch furnace pit, the joist ledges in the side walls of the building, the front arch, arch corner, the middle supports and registers, the outside tile walls, the stage doors, the front edge of the stage floor, the inside trim, and balcony were not constructed according to the plan and specifications. It is alleged that in several instances certain portions of the building were not constructed at all. The difference between the construction of these items, as required by the plan and specifications and the way in which they were constructed in the building, and the estimated cost of each item required or necessary to construct, or perfect each of them, according to the plan and specifications, is set out. The total itemization thereof is alleged to be $2,176.15.

On June 27, 1928, the deposition of Peter Cassinelli was taken. He was asked about the changes made by Stacy. He testified that he (Cassinelli) had him "change the machine booth from left to right; one step, the step outside, inside, the step to go up into the balcony; and a place of a window, the front window."

The deposition of A. L. Ware, an engineer and architect, was taken on the same date. He stated in detail the difference between the building called for by the plan and specifications, and that which, in fact, Stacy erected. It is shown by him that the front coping as shown by the plans was to be 9 inches thick, and 15 inches high at the roof. It was constructed three rows of brick approximately 8 inches in height. Coping panel called for in the plan and specifications show brick material in the center of the building. It was constructed without the coping panel. The front wall, as shown by the plan, was to be 15 inches thick. It was constructed 8 inches instead of 15. The secondary wall was to be 9 inches. A gap was left in this wall several feet in dimension near the center. The coal bin, according to the plan, should have been 5 feet by 9 feet, and the wall forming it was to form a part of the center wall. It was not constructed. The boiler was to be pitted one foot below the basement level, the

pit to extend over the embankment wall to protect the basement from high water. This construction was not made. The basement concrete posts were to be 2-foot square. They were constructed one-foot square, and out of plumb. The roof trusses were to be centered over the supporting pilasters on either side of the building. They were not so built. The subfloor and roof base were to "be laid diagonally." This was not done. In the roof plan, three vents, 3 feet wide and 4 feet long, were to be constructed. There were only two vents, the middle one being omitted. The bottom of the two exit doors on either side of the stage were not flush with the floor. Two platforms, 3 feet by 3 feet outside the building were not constructed. The contract provided that in the side walls of the building sufficient holes are to be placed to support any building which may hereafter be erected on both sides of it, so that the walls of the building may be used as a support, or double wall. These joist ledges were placed at randon from 16 to 40 inches, center to center. The arch supports were to be 2 feet long and 13 inches wide. They were constructed, middle supports 24 inches long and 8 inches wide, a reduction of 5 inches in the width. The floor plan called for two registers. They were not provided. The workmanship described by him is in this language:

"A. First, the outside tile wall joists have not been finished and an insufficient amount of mortar has been used and the mortar in it is now showing poor mixture, lacking of sufficient cement, and too much sand, a number of joists are still open to the weather with little evidence of mortar having been used to fill the cracks on the outside. Second, the alignment of base posts and the character of the cement or concrete produced has been heretofore outlined. Third, the main floor six feet from the stage and across the building shows a 2½ inch sag in the middle. The main floor directly in front of the ticket office and across the building shows a bulge of 1½ inches. These long variations show foundation troubles. The floor shows short variations as great as one inch in places, indicating that no attempt has been made or was made to level the joists previous to the laying of the sub-floor. Fourth, the stage truss is shimmied on the left hand side, with a 2x4 in order

to give the proper support for the rafters. Fifth, the front edge of the stage floor projecting into the auditorium is left 'raw' absolutely unfinished, no attempt to panel or finish this exposed front of the stage elevation has been made. Sixth, the inside trim throughout of the building has been hurriedly and improperly applied. The baseboard gaps in places 5/8 inch from the wall. Door and window trim show wretched workmanship. Doors are not fitted to openings, showing from $\frac{1}{4}''$ to $\frac{1}{2}''$ clearance at the bottom. Seventh, standing on the stage looking toward the front of the auditorium or toward the street entrance, the balcony shows a very pronounced 'arch effect.' By test the lower projecting line of the balcony arches two inches.''

He estimates the market value of the building as it was constructed at $3,000.

Mr. Pelfrey, a builder and contractor, described the building in this language: ''Well, the walls. The right hand front corner has a bulge in it. It bulges out at least three inches. The floor in front of the ticket office bulges up about $1\frac{1}{2}$ inches in the center. The floor in front of the stage is about 2 inches low in the center on account of not having proper foundation for the walls. The roof trusses are not ex-braced at all. The walls and plastering has big cracks in it and leaks when it rains. The baseboard stands away from the walls on the average about $\frac{3}{4}$th of an inch. You can see through it to the ground. The bridging of the floor joists are not nailed on the bottom end. They are loose on the back end. I never looked at the front end. The roof is swagged down in the center. The bottom run of the trusses are spread open about $1\frac{1}{4}$ inches. The upright braces are broken. The trusses are not setting in the center of the pilasters. One or two of them has shims under the rafters to hold them off the trusses.''

It is further shown by his testimony in substance as follows: ''The roof trusses zigzagged, and if weight is put upon the roof such as resulting from a snow to any extent, the walls will be bound to fall.'' ''Some of the trusses are already broken. The joist ledges on the inside of the walls are placed some 16 inches in the center, and others 24 inches. A fourteen foot space is left out, they did not put any in there at all, and the trusses are low down; the screen on the front stage has not sufficient

clearance." In reference to the walls of the building, he says: "The outside wall has not a proper foundation. It has given down to some extent and the foundation posts that go there are not in line and are not plumb." They are "too small" for the amount of weight that is on them. They are 12 by 12 inches. The secondary wall has a "gap of about eight or ten feet in the center of it." The arch supports are 8 by 24 inches. The middle supports, "some of them are built on a solid foundation," so that it held the front up. "At the back of the building the creek has washed out some of them and they have sunk down. The doors are sawed off at the bottom and are too small. Some pieces are nailed on the bottom of them. The locks to the doors would not fasten or lock."

The reasonable fair market value of the building was placed by this witness at $4,000.

On September 7, 1928, the deposition of Mr. Stacy was retaken. He was asked and answered relative to these many items. He says the coping is 12 inches and constructed better than the plan called for. In explaining why it was constructed in a certain way, he says it was agreed to be constructed that way by Mr. Cassinelli himself. With very few exceptions in this second deposition, in explaining how it was that there was a variation in the material or omissions in certain portons of the building called for in the plan and specifications, he says that it was agreed to and directed by Peter Cassinelli. In explaining the placing of the doors in the building, and the manner of fitting them, his language is: "It was put up as good as it could be put up by workmen." In explaining his failure to build the balcony with an "arch effect," he says that it was built that way to give strength and was agreed to by Mr. Cassinelli.

The testimony of the employees of Stacy who engaged in the construction of this building was taken, but it does not contradict the testimony of Ware and Pelfrey. It is stated by them that Spaulding, Cassinelli, and Stacy were at the building when some of the witnesses were called in to hear a conversation. They say that it was agreed by Mr. Cassinelli that if certain items were corrected "that he would go to town and pay off." It is testified by these witnesses that the things complained of by him at that time were corrected in accordance with Mr. Cassinelli's request. Cassinelli had seats and motion picture equipment installed while the work

was going on, which were intended to be used by him in the building. During the pendency of the action, Peter Cassinelli died and the action was revived against his personal representative and heirs. On submission for trial, the circuit court rendered judgment for the appellee for $787.33 and interest against the administrator of the estate and heirs of Peter Cassinelli, and it was adjudged that the appellee had a mechanic's lien on the property to secure his judgment, and directed certain property be sold to satisfy it. The appellants on this appeal insist that the building was not constructed in accordance with the plan and specifications and the contract; that it is so materially different therefrom that the appellee is only entitled to recover on a quantum meruit for the material furnished and the work he did, less the damages Cassinelli had sustained by breach of the contract. They urge as applicable to the proven facts the rule enunciated in Morford v. Mastin, 6 T. B. Mon. 612, 17 Am. Dec. 168.

The appellee contends that the written contract was modified by oral agreements of the parties, and that the modification is abundantly proven, and, when coupled with the further fact that the building was accepted by Cassinelli after the changes were made in certain particulars from the plan and specifications, authorize the judgment of the chancellor. The burden of proof in respect to these matters was on the appellee. Leban v. Kiley, 54 S. W. 727, 21 Ky. Law Rep. 1186.

For cogent reasons the modification of the written contract by the oral agreements relied upon by the appellee is unenforceable.

It is to be noted that the alleged oral agreements which are relied upon by appellee in his pleadings are not alleged and proven to have been supported by a consideration. A "consideration" is the reason which moves contracting parties to enter into the undertaking. It may be a forebearance or the promise thereof, which is offered by one party to the agreement and accepted by the other. It is the price, motive, the matter of inducement to contract, whether it be compensation which is paid or the inconvenience which is suffered by the party from whom it proceeds. Farmers' Bank of White Plains v. Williams, 205 Ky. 261, 265 S. W. 771. A consideration may be a benefit to one and a detriment to the other party to the contract. Wallace v. Cook, 190 Ky.

262, 227 S. W. 279. The alteration or modification of a contract to be effective must be supported by a consideration, which need not be the payment of money or delivery of property, but it may be anything which is of benefit to the promissor or detriment to the promisee. It is not alleged or proven that Cassinelli received any benefit by reason of the alleged modification or change in the written contract as claimed by the appellee. On the contrary, according to the evidence, the building he desired to have erected according to the plan, specifications, and written contract was very materially affected, not only in construction but in value, by reason of the claimed modification. "Benefit," as used in this connection, means that if Cassinelli consented to the modification of the written contract that, in return for his consent thereto, he acquired some legal right to which he would not otherwise have been entitled. Combs v. Burt & Brabb Lumber Co., 85 S. W. 227, 27 Ky. Law Rep. 439; Clausen v. Railey, 145 Ky. 350, 140 S. W. 547; Louisville Trust Co. v. Bayer Steam Soot Blower Co., 166 Ky. 744, 179 S. W. 1034; Wallace v. Cook, 190 Ky. 262, 227 S. W. 279. It is admitted that parts of the building called for in the written contract, plan, and specifications were omitted. It is satisfactorily shown that other items were not up to the standard as fixed by the contract, the plan, and specifications. Considering these facts as established, the contract, plan, and specifications to this extent may be regarded as having been abandoned by the parties, and for this reason less labor and material were required and used by the appellee in the construction of the building. It is apparent that appellee derived a benefit therefrom, and to that extent Cassinelli should be entitled as a matter of right to a reduction in the contract price. If a modification or change in the contract had been made by the parties, which would have required extra material and labor, under the rule announced by this court in Wright v. Wright, 1 Litt. 179, and Escott & Son v. White, 10 Bush, 169, the appellee would be entitled to pay therefor. We see no reason why the appellee, who received the benefit of the modification of the contract by reason of which much material and labor were saved to him, should not account to Cassinelli for the reasonable value thereof by allowing to him a reasonable deduction from the contract price.

In Holmes v. Stummel, 17 Ill. 455, the rule is stated in this language: "Where a party is bound by contract

to perform certain work, it is presumed that if any part of it is to be omitted, there should be a reasonable deduction from the contract price for the work omitted, unless a different intention is shown by the evidence.''

There is no evidence offered to show, and it cannot be presumed, that Cassinelli intended to pay the original contract price for the building constructed as it was when the omitted labor and material so materially affected the building and its value. The contract provided that the erection of the building was to be under the supervision of Spaulding as supervising architect. But this he did not do. In fact, he gave no attention to the work and material used in the building, and was not present during the time of its erection. Cassinelli himself was without experience, old, and not qualified to supervise the work and material used in its construction. The architect, Spaulding, did not inspect and accept the building, nor did Cassinelli do so himself, after it was completed. Cassinelli was entitled to have it inspected by someone qualified for such work. It does not appear this was done until it was inspected by Ware. It is abundantly shown by the evidence that in many respects the appellee caused or permitted inferior work to be done on the building, and left out of it much necessary material, and that such condition prevailed practically throughout the entire building. Its safety as well as its market value was materially affected thereby. It is hard to conceive that after having the plan and specifications drawn and contract prepared and signed, Cassinelli intended to release appellee from the contract so as materially to affect the building and its value and at the same time intended to be liable for the full contract price. Appellee agreed to erect the building ''in a first-class workmanlike manner'' and to ''employ first-class workmen.'' The workmanship on the building is shown by the evidence to be not within this class and not within a reasonable interpretation of the written contract. It is not alleged nor attempted to be proven that any modification or alteration of the written contract was made by the parties in respect to the kind and nature of the workmanship contemplated by it. The appellee contents himself in this regard by attempting to show by himself and employees that in this respect the contract has been substantially complied with. The itemization of the defects and omissions as given by Ware, and as described by

Pelfrey, show that the building "was not constructed in a first class workmanlike manner and by first class workmen." No evidence was offered by the appellee to contradict the testimony of Ware and Pelfrey as to the work and material used or omitted, or as to the market value of the building, except in so far as it may be regarded as contradicted by the testimony of appellee, wherein he insists that the building was completed as per the contract as modified by oral agreements with Cassinelli. The experience and skill of the workmen employed and used by him in the construction of the building, as described by themselves, tend to show that they were not that type of skilled workmen the appellee agreed in the written contract to employ and use in its construction. The appellee insists that it is abundantly established by the evidence that, after or about the time the work on the building was completed, Cassinelli, in the presence of Ware, Sam Engle, John Spaulding, J. W. Kraft, himself, and others, agreed that if the appellee would fix particular work, he would accept the building and pay the balance of the contract price, and therefore he is now estopped to complain. It is not shown, nor attempted to be shown, that at that time Cassinelli or Spaulding knew of the defects in the workmanship or materials throughout the entire building.

It is further insisted that Cassinelli took actual possession of the building, moved seats and equipment for a picture show into it, and otherwise assumed control over it, and that by reason thereof he is without right to complain of the defects, omissions, or variations from the contract, the plan, and specifications. Cassinelli did not forfeit his claim against appellee for damages by his taking possession and assuming control of the buliding or by not discovering all of the defects or omissions in its construction, or by agreeing that if certain specified defects were corrected that he would "pay off." Ludlow Lumber Co. v. Kuhling, 119 Ky. 251, 83 S. W. 634, 26 Ky. Law Rep. 1185, 115 Am. St. Rep. 254; Hartford Mill Co. v. Hartford Tobacco Warehouse Co. (Ky.) 121 S. W. 477; Morford v. Mastin, supra; Escott & Son v. White, supra; Farnan v. Lexington Ice Manufactory, 9 Ky. Law Rep. 621; Id., 13 Ky. Law Rep. 270; Panke & Bro. Ass'n v. Fisher, etc., 48 S. W. 993, 20 Ky. Law Rep. 1167; Vincennes Bridge Co. v. Walker, 181 Ky. 651, 205 S. W. 778; Young v. Cumberland County Educational Society, 183 Ky. 625, 210 S. W. 494, 6 A. L. R. 135.

It cannot be said that appellee has literally performed his written contract according to the plans and specifications or that he has substantially performed it. It is established by the witnesses that he did not substantially perform the written contract and erect the building according to the plan and specifications. Originally, at common law it was the rule that a literal performance with respect to building contracts was applied in such cases. This rule has been changed to the extent of allowing the equitable doctrine relating to substantial performance to be applied.

Two reasons are given by the courts for the rule that a substantial performance for a building contract will support a recovery. One is that it is next to impossible for a builder literally to comply with all the minute specifications in a building contract. The other is that the erection of a building on the lot of the owner, such owner must receive the benefit of the contractor's labor and materials, and it is therefore deemed equitable to require him to pay for what he gets. Morford v. Ambrose, 3 J. J. Marsh, 688; Morford v. Mastin, 6 T. B. Mon. 609, 17 Am. Dec. 168; Jackson Lumber & Supply Co. v. Deaton, 209 Ky. 239, 272 S. W. 717. The rule of substantial performance cannot be invoked where the defects in the construction or the omissions from the requirements set forth in the building contract are intentional, and not the result of an attempt in good faith to perform the contract. Bowen v. Kimbell, 203 Mass. 364, 89 N. E. 542, 133 Am. St. Rep. 302; Handy v. Bliss, 204 Mass. 513, 90 N. E. 864, 134 Am. St. Rep. 673 and notes. But an intentional omission to do certain things called for by the contract, if the contractor believes they are not required of him, and intends in good faith to do all that he has agreed to do, does not prevent the application of the doctrine of substantial performance from controlling his rights and remedies. Handy v. Bliss, supra; Young v. Cumberland County Educational Society, 183 Ky. 625, 210 S. W. 494, 6 A. L. R. 135. The doctrine of substantial performance permits the builder to recover on the entire building contract if the work has been done under a building contract, but is defectively done, allowing damages for incompleteness. The measure of recovery for a breach of the contract by the builder in such event is the difference between the contract price of the building constructed according to the contract, and its

reasonable value as it is at the date of completion. Jackson Lumber & Supply Co. v. Deaton, supra; City of Newport v. Newport & C. Bridge Co., 90 Ky. 193, 13 S. W. 720, 12 Ky. Law Rep. 39, 8 L. R. A. 484; Vincennes Bridge Co. v. Walker, 181 Ky. 651, 205 S. W. 778; Hartford Mill Co. v. Hartford Tob. Warehouse Co. (Ky.) 121 S. W. 477; Taulbee v. Moore, 106 Ky. 749, 51 S. W. 564, 21 Ky. Law Rep. 378. But, if any work or material required by the contract has been omitted, and same may be done or furnished at reasonable cost, in this event, the measure of recovery is the cost of doing the work or furnishing the material so omitted. Jackson Lumber & Supply Co. v. Deaton, supra.

It is shown by the evidence that the defects and omitted parts of the building can be corrected or installed at a reasonable cost. Mr. Ware's summary of the items and their cost is as follows:

| | |
|---|---:|
| Front coping wall | $ 30.00 |
| Coping panel | 15.00 |
| Front basement wall | 45.00 |
| Secondary wall | 50.00 |
| Coal bin | 35.00 |
| Furnace pit | 15.00 |
| Basement posts | 150.00 |
| Roof trusses | 350.00 |
| Shiplap | 250.00 |
| Vents | 25.00 |
| Exit doors | 20.00 |
| Joist lodgings | 150.00 |
| Arch supports | 250.00 |
| Registers | 3.00 |
| Bill board | 1.00 |
| Workmanship items | |
| Outside tile | 35.00 |
| Floor alignment | 400.00 |
| Stage truss | 25.00 |
| Front stage finish | 50.00 |
| Inside trim | 100.00 |
| Balcony bulge | 300.00 |
| | $2,299.00 |

There is no evidence controverting the items as given by him, or his estimated cost of repairing or installing them in the building. The items indicated by appellee and his witnesses as those which Cassinelli

stated that if they were fixed he would "pay off" are not embraced in the statement of Ware. While the market value of the building as it was completed was fixed by both Ware and Pelfry, the appellants predicate their counterclaim on the theory that the defects and omitted parts of the building can be corrected or installed at a reasonable cost. Their right to a recovery therefor must be measured and determined by the rule applicable in such cases as we have stated it.

We have often announced that "while it is the rule not to reverse the judgment of the chancellor on a mere matter of the credibility of the witnesses, or where under the evidence as a whole the truth of the matter involved is doubtful, it is also the rule that we will weigh and judge of the sufficiency of the evidence for ourselves, and, where it is found to preponderate for one side or the other in such a way as to convince us that the chancellor erred, his judgment will be reversed." Faulkner v. Headrick's Adm'r, 213 Ky. 692, 281 S. W. 813, 814; Lewis v. Shell, 205 Ky. 624, 266 S. W. 254. On consideration of the evidence, giving due weight to the judgment of the chancellor, we are convinced by the preponderance of the evidence that the chancellor erred, and that the appellants on the proven facts and the principles of law enunciated in the cases, supra, are entitled to a judgment for the reasonable cost of correcting the defects and supplying the omissions in the building as it was constructed. The estimation of the amount necessary to accomplish this is fixed by the uncontradicted evidence at the sum of $2,299. Giving appellee the benefit of the items which Cassinelli agreed for the appellee to correct and then he would "pay-off," and considering his admission that he consented for "the machine booth to be moved from left to right, the inside step to an outside step going to the balcony, and the change in the placing of a front window," on this account, we reduce the amount fixed by Ware, $299, thus fixing the amount of appellants' recovery at $2,000, less $789.33, the balance claimed to be due by appellee on the contract.

Judgment is reversed and cause remanded, and judgment will be entered consistent with this opinion.