**STATE PROPERTY & BUILDINGS COMMISSION OF the DEPARTMENT OF FINANCE, etc., Appellants,**

**v.**

**H. W. MILLER CONSTRUCTION COMPANY, Inc., Appellee.**

Court of Appeals of Kentucky.

Dec. 18, 1964.

Paul E. Tierney, Melbourne Mills, Jr., Frankfort, for appellants.

William H. Bixler, Hughes, Clark & Burke, Covington, for appellee.

PALMORE, Judge.

The State Property and Buildings Commission (KRS 56.450) sued appellee, H. W. Miller Construction Company, for damages in the amount of $4,447 resulting from an alleged breach of contract. At the close of plaintiff's evidence the trial court sustained defendant's motion for a directed verdict and entered judgment accordingly. The commission appeals.

The briefs present two issues, (1) interpretation of the contract and (2) sufficiency of the proof of damages.

The contract, awarded to Miller in June of 1955, covered the construction of a state office building in accordance with detailed specifications, drawings, and other incorporated documents for a total price of $156,900. The work was completed, payment was made and the state proceeded to occupy and use the building. In 1960 certain water pipes laid under concrete slab in an unexcavated portion of the structure began to leak, causing water to flow into an adjacent basement area. Investigation disclosed that the pipes had not been enclosed in a sonotube duct as required by the contract drawings and had rusted out.

The contract specifications called for foam glass insulation on the pipes but made no mention of any further type of casing. The detailed drawings, on the other hand, called for the sonotube casing but made no reference to the foam glass insulation. The contractor did install the foam glass insulation around the pipes but did not provide any further encasement. He (it) now contends in substance that there was an ambiguity as between the written specifications and the detailed drawings, which must be resolved against the state as the author of the contractual instruments, and that he reasonably construed them to mean that he was to provide either the foam glass or the sonotube duct but not both.

As explained in the testimony, foam glass is an insulating material only. It is not waterproof and will not protect against

moisture. The piping was steel and, as it was to be laid in the ground, had to be protected against water. That was the purpose of the sonotube duct, which is impervious to moisture. The drawings show clearly that one 16-inch sonotube duct was to house three small steel pipes and one copper tube. As illustrated, each of the three steel pipes is surrounded by a concentric hatch-marked area indicating some type of wrapping or cover. When the drawings and specifications are considered together (and it is not disputed that both are part of the contract), especially in the light of the testimony explaining the separate functions of the insulation and the sonotube duct, there is no ambiguity. Moreover, Article 52 of the "General Conditions" of the contract provides in part as follows:

"Anything called for in the specifications and not shown on the drawings or shown on the drawings and not called for in the specifications, shall be included in the Contractor's work, the same as if included in both."

■ It is our conclusion that the agreement required foam glass insulation on each of the underground steel pipes and a waterproof sonotube duct encasing the whole. Breach of the contract in this respect was proved.

It was further proved that upon discovery of the defect Miller was requested to remedy it and failed to do so, whereupon the state designed the necessary repair work, awarded a contract in the amount of $4,447 for its performance, and paid out that sum on completion of the job. There was no proof of market value of the building with the defective condition as against what its market value would have been without it.

The parties are not so much in disagreement with respect to the proper measure of damages as they are with regard to the way in which that measure applies to the facts of this case. However, for the sake of clarity it is well that we review the law before more closely considering the particular facts.

■ "When the building is completed but the construction is in some respect defective, the principle upon which damages are to be estimated will depend on whether the defect can be remedied by the expenditure of a reasonable amount of money. If in view of the expense it is reasonable to remedy the defect, then the measure of damages is the cost of remedying it. If, on the other hand, the value of the building with the defect is greater than its value without the defect less the cost of applying the remedy, then the measure of damages is the diminution in the value of the building by reason of the defect." Sedgwick on Damages, § 644 (Vol. 2, p. 1293). See also on this general subject 13 Am.Jur. 2d 79 (Building and Construction Contracts, § 79); Restatement, Contracts § 346(1) (a); and annotation, Cost of correction or completion, or difference in value, as measure of damages for breach of construction contract, 76 A.L.R.2d 805.

From an examination of the numerous decisions of this court in which the question was discussed it is apparent that time and again it has been argued in vain that a "difference in value" instruction was unauthorized because the evidence showed only the cost of remedying the defect. Cf. Mikkelsen v. Fischer, Ky., 347 S.W.2d 525, 528 (1961); Alvey v. Kern, Ky., 354 S.W. 2d 516, 518 (1962). Probably this is because, that being the only form of instruction on the point set forth in Stanley's Instructions (§ 216), the courts have been reluctant to give one that is more appropriate. The form in question was taken from Taulbee v. Moore, 106 Ky. 749, 51 S.W. 564, 21 K.L.R. 378 (1899), but as pointed out in footnote (1) to § 216 of Stanley, the court later commented in Forbes v. Hunter, 31 K.L.R. 285, 102 S.W. 246 (1907), that perhaps it would be better to tell the jury that the measure of damages is the sum required in order to make the building conform to the contract. And indeed it would

be. Confusion and misunderstanding have arisen from our persistence in approving an instruction based on the one measure when the evidence is devoted entirely to another.

■ There is no question that in this state the real measure of damages for defective performance of a construction contract is the cost of remedying the defect, so long as it is reasonable. Mikkelsen v. Fischer, Ky., 347 S.W.2d 527, 528 (1961); Ward v. Qualls, 229 Ky. 662, 17 S.W.2d 739, 740 (1929); Young v. Cumberland County Educational Soc., 183 Ky. 625, 210 S.W. 494, 496, 6 A.L.R. 135 (1919). As we construe the relationship between market value and cost of remedying the defect, the latter becomes unreasonable only (a) if it exceeds the difference between the market value of the building as it should have been constructed and its market value as actually constructed (assuming the defective condition to be known), or (b) if it amounts to more than is reasonably necessary in order to bring the building into substantial conformity with the contract.

■ In simple terms, the measure of damages is the amount that is reasonably necessary in order to make the building conform to the requirements of the contract, but in no event to exceed the difference, if any, between its market value as it should have been constructed and its market value as it was actually constructed.

■ Pursuing this subject one step further, as it is necessary to do in order to harness this case to it, when the owner has proved what it reasonably cost him to make the building conform to the contract it should not be necessary for him to go into the question of market value unless that question is raised by the defense. In the absence of evidence to the contrary it would ordinarily be presumed (and our decisions have tacitly recognized this) that as between a willing seller and a willing buyer of a new building known to be in need of certain repair work the anticipated cost of the remedial work would reduce the price by an equivalent amount. So, unless there is evidence to inject it, the question of market value need not be considered, and the commission's evidence in this case was not deficient in that respect.

■ We are in agreement with Miller's contention that the damages should not exceed the sum that is reasonably required in order to put the owner in the same position in which he would have been had the contract been performed. A stone wall, for example, could not be built and charged to the contractor because he failed to put up a wood or wire fence. The owner can do only that which is *reasonably* required. The bone of contention in this case is that when the state replaced the pipes it made a different and better arrangement. It used copper instead of steel pipes and laid them in a concrete trough with a removable cover on top instead if burying them in the ground and replacing the concrete slab. However, with the new method of installation it was not necessary to use insulation or to provide any waterproofing, and it was testified that even though the resulting condition was superior to the original design the comparative costs would be substantially the same. If that is true, the difference between the new construction and the original contract design could not be of material significance to the defendant contractor.

■■ It was proved also that after removal of that portion of the concrete surface covering the rusted pipes it would not have been practically possible to make the new installation according to the original plans, because the remainder of the concrete slab would be left without sufficient support.[1] When it is no longer feasible to

---

1. The trough called for by the new design was so constructed as to provide, by its perpendicular wall, a footing to support the edge of the truncated slab. The important of the testimony was that an earth fill covered over by new concrete laid flush with the old slab would not have sufficed.

make a defective building conform to the original contract specifications, if the defects are nevertheless remediable in some other manner the rule of reason applies. The owner may do what is reasonably necessary under the circumstances. In this case the commission has proved enough to go the jury. The contractor has not yet put on any evidence. He can challenge the reasonableness of what has been done. It is further possible that he may produce testimony to show that the remedial work, even though reasonable and necessary under the circumstances, actually enhanced the market value of the building beyond what it would have been worth had it been constructed originally in conformity with the contract. If so, he should be protected by an instruction entitling him to a credit in the amount of such enhancement.

The judgment is reversed with directions for a new trial.