Roger MURRAY, Appellant,

v.

Charles Gary McCOY, Appellee.

Charles Gary McCOY; and Mountain
Metal Company, Inc., Appellants,

v.

Roger MURRAY; and Murray Con-
struction and Development,
Inc., Appellees.

Nos. 95–CA–000237–MR,
95–CA–000304–MR.

Court of Appeals of Kentucky.

July 26, 1996.

As Modified on Denial of Rehearing
Sept. 27, 1996.

Discretionary Review Denied by
Supreme Court Aug. 27, 1997.

James A. Combs, Prestonsburg, for Charles Gary McCoy and Mountain Metal Co., Inc.

Thomas W. Moak, Prestosburg, for Roger Murray and Murray Contruction & Development, Inc.

Before EMBERTON, JOHNSON and MILLER, JJ.

EMBERTON, Judge.

Gary McCoy contracted with Murray Construction for the building of a house in Floyd County. The contract provided the cost of the completed house would be $212,190, and was to be completed within 180 days. Construction began on June 13, 1984. Following numerous delays and construction problems, on January 15, 1986, McCoy terminated Murray and refused to pay $72,000 then claimed to be owed on the contract. Murray filed suit to recover the amount owed and McCoy counterclaimed alleging damages from poor workmanship and failure to meet the time specifications of the contract.

At trial evidence revealed numerous instances of poor workmanship. There were no footers at the garage doors and the chimney was not constructed according to the house plan. Tile floors were cracked and windows were incorrectly installed. The substandard quality of the brickwork on the front of the house, poor insulation, leaks in the house, faulty electrical and plumbing work, and poorly hung woodwork were only some of the difficulties with the construction of the house. The trial court found that "three major errors in the construction were the uneven floor, the cracking and sinking garage, and three apparently irremediable leaks."

McCoy hired a contractor who successfully remedied some of the defects. The cost of the repairs, which McCoy paid, was $30,479.34. There was also evidence that despite these repairs there were certain repairs which could not be made, and as a result, the market value of the house was diminished. One expert estimated the "defect-free" value of the home as $500,000 and its present value at $350,000. Another expert testified that the "defect-free" value would be $380,000 and its present value $365,000. The trial court found that the "defect-free" value of the home was $380,000; it further found, however, that the gravity of the three major irreparable flaws diminished the present value of the home to $350,000.

Although the trial court found that McCoy spent $30,479.34 in repairs, it did not allow him recovery of the expenses. The trial court reasoned that recovery is permitted for the cost of repairs, or the diminution in value of the property by reason of the faulty construction, whichever is less. McCoy was awarded the $30,000 diminution in value.

█ The measure of damages in cases where there is faulty construction not in accordance with a building contract is stated in *Baker Pool Company v. Bennett*, Ky., 411 S.W.2d 335, 338 (1967):

In the case at bar there is the issue and conflicting testimony as to whether or not the pool could be repaired. If it could reasonably have been repaired, then the measure of damage is different from the measure if the jury determines that it cannot be repaired. The law in this situation was fully discussed in *State Property & Buildings Commission, etc. v. H.W. Miller Construction Company, Inc.*, Ky., 385 S.W.2d 211, wherein we pointed out that if the structure can reasonably be repaired 'the real measure of damages for defective performance of a construction contract is the cost of remedying the defect, so long as it is reasonable'. We then pointed out that if the structure cannot be repaired, or if the expense of repair is unreasonable, the test is the difference between market value of the building as it should have been constructed and the market value as it

actually was constructed. (Citations omitted).

We cannot agree with the trial court's interpretation that the measures of damages are exclusive of one another and that there cannot be an award for repairs made and the diminished value of the home where it remains defective because of irreparable faults.

■ The purpose of remedial damages is to put the owner in the same position he would have been in had the contract been performed. *State Property & Buildings Commission, etc. v. H.W. Miller Construction Company, Inc.*, Ky., 385 S.W.2d 211 (1964). Although generally, repairs will successfully remedy defects caused by the contractor's poor workmanship, there are those situations where the repairs will not give the owner a structure as valuable as the original contract contemplated.

The trial court found this to be such a situation. The judgment makes two separate findings of damages. First, $30,479.34 was expended to repair those defects in the home which were repairable. Three major irreparable defects remained which diminished the value of the house by $30,000. An award of $60,479.34 is not a double recovery for McCoy but puts him in the position he would have been in had the house been properly constructed. To allow him only the amount for diminution in the value of the home, leaves him without recovery of the amount paid for repairs.

McCoy alleges that he was entitled to $50 per day liquidated damages as provided for in the contract for each day the contract was extended beyond the 180 day deadline. At the time McCoy finally fired Murray, 397 days after the date specified in the contract for completion, the structure was still incomplete. The trial court found that the delay was caused by McCoy's indecision and changes made in the plan and that the contract provided for a reasonable extension of time. It further found, citing *United Pac. Ins. v. Collins*, Ky., 389 S.W.2d 242 (1964), that McCoy had waived the contract deadline.

■ The testimony reveals that McCoy did make changes in the plans and that the changes resulted in delays. He made changes in both the exterior and interior design of the house. The plumbing and electrical layout, heating and cooling system, and shingles on the roof were all changed, and certain items were changed from standard to custom made. Additionally, McCoy added features such as a security system, which further delayed the project. In view of the poor workmanship performed by Murray, we are skeptical that even without these changes the house would have been completed by the contract deadline. We agree with the trial court, however, that the contractor should not be charged with delays caused by the owner's desire for changes in, and (As Modified: 9/27/96)additions to, the building plans. *Mattingly Bridge Co. v. Holloway & Son Construction Co.*, Ky., 694 S.W.2d 702 (1985). Guided by the clearly erroneous standard, the finding that McCoy is not entitled to the $50 per day as liquidated damages is affirmed. *Forcum–Lannon, Inc. v. Wells*, Ky., 438 S.W.2d 508 (1969).

■ Finally, Murray appeals alleging that it is entitled to prejudgment interest on the $72,000 found owed it under the contract. The contract price, although stated, was subject to revision depending on optional items, and the amount owed was disputed. Murray did not complete the job and that which it did perform was substandard. The trial court has the discretion to weigh the equitable considerations and determine whether prejudgment interest should be awarded. *Nucor Corporation v. General Electric Co.*, Ky., 812 S.W.2d 136 (1991). We find no abuse of that discretion.

That portion of the trial court's judgment which awards McCoy damages based only on the decrease in the value of the structure is reversed, and McCoy shall recover $60,-479.34, representing the amount paid for repairs and the diminished market value in its present state. All other portions of the judgment are affirmed.

JOHNSON, J., concurs.

MILLER, J., concurs in result only.