**UTILITY REGULATORY COMMISSION and Consumer Intervention Division Office of the Attorney General, Appellants,**

v.

**KENTUCKY WATER SERVICE COMPANY, INC., Appellee.**

Court of Appeals of Kentucky.

Aug. 20, 1982.

---

William M. Sawyer, Ellyn Elise Crutcher, Frankfort, for appellants.

William P. Curlin, Jr., Frankfort, for appellee.

Before COOPER, HOGGE and VANCE, JJ.

HOGGE, Judge.

This is an appeal from an order of the Franklin Circuit Court remanding a utility rate case to the Public Service Commission for a rehearing. On May 23, 1980, the appellee, Kentucky Water Service Company, Inc., notified the Utility Regulatory Commission of its intent to adjust its water rates in the communities of Somerset, Middlesboro and Clinton so as to increase revenues by $772,000. The Water Company also requested an extension of Commission approval of short-term financing in the amount of $2,300,000.00.

The Utility Regulatory Commission concluded that the Company should be allowed to increase its annual revenue by approximately $341,420 (less than the figure requested), resulting in a return on common equity of 13.0%. In arriving at its figures, the Commission reviewed financial data filed by the Company, and made certain adjustments. The retained earnings reported by the company were reduced by $335,843, reflecting the subtraction of accumulated Job Development Investment Tax Credit (JDITC) money, which the Commission felt should not be channeled into retained earnings. This altered the statement as to the capital structure of the company. JDITC money had been treated as retained earnings by the company in past years, however, no objection had been raised by the Commission.

The figure proposed by the company for electric power expense for pumping was reduced by $3,836. The Commission calculated the allowance for short-term debt interest at a rate of 13.5%. The Company was allowed to continue short-term financing until long-term funds were available.

The Kentucky Water Company filed a petition for rehearing in which it complained of the following matters: (1) the rate of return on equity; (2) the cost rate on short-term debt; (3) the treatment of J.D.I.T.C.; (4) the method used to adjust purchased power cost; (5) the failure to adjust for the full amount of the estimated overrun of rate case expenses; and (6) denial of due process of law—lack of support for the Commission's decision in the evidence. The petition for rehearing was denied.

On appeal, the Franklin Circuit Court stated that the denial of a rehearing was improvident. The circuit court was of the opinion that the commission should have permitted the company to "exhibit how the alleged errors came about, and to allow an examination of the feasibility of consideration of current interest rates as a tool to be employed in the rate making process." The

case was remanded to the Commission with directions to sustain the petition for rehearing.

In the appeal to this court, the Commission contends that the circuit court erred in remanding the rate case where (1) no finding of confiscation was made; (2) no "newly-discovered" evidence was noted and (3) the Commission's order was supported by substantial evidence. They contend that the Commission's orders should have been affirmed.

In examining the record in this case, as to the requested rehearing on treatment of J.D.I.T.C., we find that subsequent to the hearings in this case, the Public Service Commission staff requested and received, under protest, Company data relating to Kentucky Water Service Company's Investment Tax Credits from 1972 to March 31, 1980. When the November 12, 1980 order of the Commission was issued about three weeks later, it appeared that the Commission had utilized this information to adjust the company's balance sheet by removing $335,843 from retained earnings, reflecting what the Commission calculated as the unamortized portion of the Job Development Investment Tax Credit. In view of the fact that the Company, like other utilities, had been treating the money as retained earnings in its previous financial statements, and there had been no objection by the Commission, the Company was led to believe that this was appropriate, and had no way of knowing what the Commission proposed to do. (Although it is contended that the practice in past years is not significant, as the amounts of money involved then were smaller, we cannot accept this argument. The amount of funds involved does not affect the question of whether the appropriate system of accounting was utilized.) The company had no opportunity for a hearing to examine staff members performing the calculations, or to present oral arguments or evidence as to the propriety of the action prior to the issuance of the order.

In its motion for a rehearing, the Company also had sought to examine other alleged errors in the Commission order such as the Commission's treatment of interest rates. A rehearing on the matter of interest rates, set at 13.5% on short-term debt was denied, although this was a time in which interest rates were extremely volatile, as exhibited by the fact that the prime rate charged by banks on short-term business loans at the time of the Commission's November 12, 1980 order was 15.5%. The denial of the rehearing foreclosed inquiry into the matter of interest rates.

▆▆ Due process requires, at a minimum, that persons forced to settle their claims of right and duty through the judicial process be given a meaningful opportunity to be heard. *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). It has been said that no hearing in the constitutional sense exists where a party does not know what evidence is considered and is not given an opportunity to test, explain or refute. 16 Am.Jur.2d *Constitutional Law* § 848. In *Bowman Transportation v. Arkansas-Best Freight System,* 419 U.S. 281, 287, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974) the Supreme Court of the United States stated:

> A party is entitled, of course, to know the issues on which decision will turn and to be apprised of the factual material on which the agency relies for decision so that he may rebut it. Indeed, the Due Process Clause forbids any agency to use evidence in a way that forecloses an opportunity to offer a contrary presentation. *Ohio Bell Telephone Company v. Public Utilities Commission,* 301 U.S. 292, 81 L.Ed. 1093, 57 S.Ct. 724 (1937) ....

Such due process rights, granted under the United States Constitution are, of course, paramount to the provisions of any statute. But even if that were not so, we cannot accept appellant's argument that statements in KRS 278.440 prohibit the remand for taking of additional evidence by the Commission. We regard that statute as merely establishing that there shall be no *de novo* trial before the circuit court of matters heard by the Commission.

There are decisions suggesting that if, because of the condition of the record, the court on appeal cannot determine what judgment should justly be rendered, it may remand the case for further proceedings. 5 Am.Jur.2d *Appeal and Error* § 962; *Young v. Cumberland County Educational Society,* 183 Ky. 625, 210 S.W. 494 (1919). We believe that such an action is clearly required where, as in this case, the lack of evidence and arguments setting forth the positions of both parties on an issue is due to the failure to grant one of the parties a meaningful opportunity to be heard. *Bowman Transportation, supra.* After such a hearing, the Commission may, or may not, conclude that the arguments made by the appellee are without merit, but in any event, the appellee had the right to be heard. We hold that the circuit court did not err in remanding this case for a rehearing on the issues of the treatment of the Job Development Investment Tax Credit and the treatment of interest rates.

The judgment of the Franklin Circuit Court is affirmed.

All concur.